## BARLOW v. PAN ATLANTIC S. S. CORPORATION et al.
### No. 176.

Circuit Court of Appeals, Second Circuit.

Feb. 6, 1939.

Jacob Rassner, of New York City, for appellant.

Barber, Matters, Gay & Vander Clute, of New York City (Russell C. Gay, of New York City, of counsel) for appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This litigation arises out of physical injuries sustained by Walter H. Barlow during his employment as an ordinary seaman on the "Panama City," a vessel owned and operated by the Pan Atlantic Steamship Corporation. On the evening of September 27, 1937, while the vessel was lying at a dock in Greenpoint, Brooklyn, N. Y., Barlow fell from the saloon deck to the well deck, a distance of about eight feet. His story of the accident is that he was sitting on a box placed near the top of the ladder leading to the well deck and was listening to a radio in the room of the third assistant engineer, when another seaman, negligently rushing by, came into contact with him so violently as to throw him off the box and down the ladder. The story told by witnesses for the shipowner is that Barlow went ashore, returned to the vessel in a state of intoxication, and because thereof fell from the ladder when trying to descend to the well deck. The ladder was in perfect condition and well lighted. Strub, the third assistant engineer, came from his room on hearing the sound of a fall, saw Barlow lying on the deck below with a bloody head, and sent a junior engineer to call Ellis, the second mate. These three took him to the first mate's room, because of its nearness to the ship's hospital room, and Ellis bathed and bandaged his wounds. He was able to walk back to his bunk in the forecastle, and Ellis saw that he went to bed, and told another seaman who slept in the same room to keep an eye on him and notify Ellis if he

appeared to be suffering during the night. The next morning Barlow complained of soreness in his chest, and an ambulance was called to take him to the Marine Hospital at Staten Island. There it was determined that he had received a serious injury to the brain and spinal cord.

The libel asserts three alleged causes of action, the first count charging negligence of a fellow seaman in causing the fall, the second failure to provide prompt, adequate and proper medical treatment, and the third refusal to pay the expenses of maintenance and cure. The district judge found that the accident was caused by Barlow's intoxication and dismissed his libel.

 The appeal raises only a question of fact as to the first count. Plainly there was ample evidence to support the finding that the libellant fell down the ladder because he was drunk. There was no corroboration of his story that Karafile ran against him, knocking him off the box, and Judge Galston did not believe it. It is elementary that the weight of the evidence on an issue determined by the trial judge is not to be reviewed by an appellate court. If there was error, as argued, in admitting the hospital record and Barlow's signed statement that neither the vessel nor any of its crew was to blame for his fall, the error was harmless, for Judge Galston's opinion states that regardless of these documents his finding would be the same.

 Complaint is made that nothing was said of the second cause of action in the trial court's opinion. Although the opinion invited the parties, if they so desired, to submit findings of fact and conclusions of law, the libellant apparently did not do so nor ask to have the opinion amplified. He now urges this court to make findings in support of the second cause of action. The argument is that the libellant's injuries were aggravated by failure to send him to the hospital until the following morning and that second mate Ellis was negligent in not realizing the severity of the injury and summoning the hospital ambulance at once. But on the evidence we can find no evidence of negligence. Barlow received the ordinary type of simple first aid treatment, which is all that can reasonably be expected from officers of a vessel having no professional doctor. After bathing and attempting to sterilize the wounds, Ellis suggested calling the ambulance, but Barlow protested against

being sent to a hospital. He was able to walk back to his quarters in the forecastle and Ellis took this as evidence that he did not require hospitalization. Not every broken head, even if the blow is severe enough to render the victim temporarily unconscious, requires professional medical attention. Barlow had quickly come to, and after treatment was able to talk rationally and to walk to his quarters. Ellis also took the precaution to warn Barlow's roommate to keep an eye on him and to report if he became restless or suffered pain during the night. While a trained physician might have realized the advisability of sending the wounded man to a hospital at once, a ship's officer cannot be held to the same standard of skill as a professional medical man. Ellis showed as much care and judgment as can reasonably be expected under the circumstances. Hence the cause of action alleged in the second count was not proved.

 The third count raises a question of law, namely, whether a seaman has a right to maintenance and cure for injuries resulting from his drunkenness. The general rule that a vessel and her owner are liable for maintenance and cure, if a seaman falls sick or is wounded in the service of the ship, is subject to a well-recognized exception, dating back to some of the earliest maritime codes, in case his disease or injury arises from his own vices or willful misconduct. See The Osceola, 189 U.S. 158, 169, 23 S.Ct. 483, 47 L.Ed. 760; The Bouker No. 2, 2 Cir., 241 F. 831, 833; The Alector, 263 F. 1007, D.C.E.D.Va. Although federal decisions applying this principle to injuries arising from drunkenness appear to be surprisingly few, there are at least two well-reasoned cases of that character. The Berwindglen, 1 Cir., 88 F.2d 125, 128; Lortie v. American-Hawaiian S. S. Co., 9 Cir., 78 F.2d 819. In The Quaker City, 1 F.Supp. 840, D.C.E.D.Pa., Judge Dickinson ruled that "mere drunkenness" does not forfeit the right to maintenance and cure; but there was no express finding that the accident was caused by the libellant's drunkenness. In the Berwindglen, supra, where there was such a finding, recovery was denied. If The Quaker City is not thus distinguishable, we must respectfully disagree with it. When it is clear that a seaman's injuries occurred solely because of his intoxication, we think they are rightly held to be occasioned by his own misconduct and that the shipowner

is under no duty to provide maintenance and cure. Such injuries are not incurred "in the service of the ship." As to the meaning of that phrase, see Meyer v. Dollar S. S. Line, 9 Cir., 49 F.2d 1002; Collins v. Dollar S. S. Lines, 23 F.Supp. 395, D.C.S.D.N.Y.

Decree affirmed.