**CARR v. STANDARD OIL CO. (N. J.).**

No. 185, Docket 21586.

United States Court of Appeals
Second Circuit.

Argued March 7, 1950.

Decided March 30, 1950.

Bertram J. Dembo, New York City (Jacob Rassner and Robert Klonsky, New York City, of counsel), for plaintiff-appellee.

Kirlin, Campbell, Hickox & Keating, New York City (Walter X. Connor and Vernon Sims Jones, New York City, of counsel), for defendant-appellant.

Before SWAN, CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Plaintiff won a judgment below of $8,000 under a Jones Act claim for personal injuries suffered while a seaman aboard one of defendant's ships and a claim for maintenance and cure. The judgment was based on a general jury verdict. Much of the evidence was conflicting, but the following seems indubitable.

Plaintiff, 22 years old, joined the crew of defendant's ship, the Fred W. Weller, on October 4, 1946. The ship, a tanker, was then at Bayonne, New Jersey. On the evening of the 4th, after finishing his duties as a messman, plaintiff joined a number of other members of the crew in drinking cognac. Some time during the night, he suffered burns on his right buttock and his right elbow. At 8.22 A.M. the following morning, the ship sailed for Baytown, Texas. Some time before the sailing, however, plaintiff told the chief steward, MacDonald, that he had been burned. The ship was then docked just about a mile away from a Standard Oil first-aid station. MacDonald,

without examining the burns, told plaintiff to start working and, when he got a break in his work, to see the captain for treatment. MacDonald did not report the burns to the captain until that evening, at which time the ship was well out to sea. During the day, plaintiff had at least two opportunities to report to the captain for treatment, but failed to do so. That night, the captain treated the injuries with tannic acid ointment and sulfadiazine. During the voyage to Baytown, plaintiff worked regularly, although how effectively is in dispute. The captain treated his burns again, although how often is also uncertain. The ship stopped at Baytown on October 14, and at Port Everglades, Florida, on October 19. At the latter port, plaintiff was examined by a doctor who came aboard the ship and who told plaintiff to go to the Marine Hospital in Savannah, Georgia. Plaintiff was paid off and given a certificate entitling him to treatment at that hospital. Savannah is 537 miles from Port Everglades. Plaintiff took a bus which passed through Savannah, but he continued an additional 850 miles to New York. Precisely when he arrived in New York is uncertain, but on October 28 he was admitted to the United States Marine Hospital at Stapleton, Staten Island. There, a skin graft was made to the burned area on his buttock. Plaintiff was discharged from Stapleton on November 26, 1946, with one week's disability. He later received further treatment at the United States Marine Clinic, Hudson and Jay Streets, New York City, the last treatment being given August 5, 1947. On September 12, 1947, plaintiff worked for the first time since leaving the ship.

Plaintiff's action rested on three grounds: (1) that he was burned by reason of defendant's negligence; (2) that his injuries were aggravated by reason of defendant's negligent failure to give him proper treatment; and (3) that as an injured seaman he was entitled to maintenance and cure. Defendant's principal argument on appeal is that there was insufficient evidence to go to the jury on either allegation of negligence.

We think that the jury, on the evidence, could reasonably have found that plaintiff was burned on a hot cylinder head on a mooring winch, and that it was negligent (a) not to have guards to protect the winch and (b) not to have the deck better lighted than it was. True, plaintiff himself testified that the accident occurred in the petty officer's mess room, and it could not thus have happened. But the jury could have believed MacDonald's testimony that plaintiff, designating the winch, said he had sat on a "stove." That MacDonald's testimony was hearsay is of no significance, since defendant did not object to its reception. Nor can defendant complain that the jury could not be certain where and how the accident happened. "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference." Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 744, 90 L.Ed. 916; Reck v. Pacific-Atlantic Steamship Co., 2 Cir., 1950, 180 F.2d 866.

On the issue of negligent failure to treat plaintiff properly, the evidence is somewhat less substantial but we think enough to go to the jury. There was testimony from which the jury could have found that the captain should have been aware that the burn was quite serious and likely to become infected. On this finding, the jury could have concluded (a) that it was negligent to treat the burn with only sulfadiazine and tannic acid ointment when penicillin was available, or (b) that it was negligent not to stop at a coastal port to hospitalize the plaintiff.

Appellant urges but one other point which we need consider: the prejudicial effect of two remarks made by plaintiff's counsel in summation. The first remark was: "I ask you to look at the defendant's own employees, interested parties who if this were a criminal action would be the defendants in the case." Defendant moved that the remark be stricken and the jury admonished to disregard it. The motion was

granted and the jury so instructed. Some time later, plaintiff's counsel spoke of "this extreme criminal negligence that the defendant is responsible for." Defendant this time moved for a mistrial. Plaintiff's counsel withdrew the remark and the court denied the motion. The jury was instructed to disregard the remark.

These characterizations of defendant's conduct were, of course, improper. However, they were not as vicious as appellant asserts; for, to the laymen on the jury, "criminal" and "criminal negligence" had no technical meaning, and almost surely meant no more than "grossly careless." Consequently, we think that the judge's instruction should be deemed to have overcome any prejudice to defendant.

Affirmed.