**BENTLEY v. ALBATROSS
S. S. CO. et al.**

**The CHRISTIAN BERGH.**
**No. 10779.**

United States Court of Appeals
Third Circuit.

Argued Nov. 21, 1952.

Decided March 30, 1953.

Milton M. Borowsky, Philadelphia, Pa., for appellant.

Thomas F. Mount, Philadelphia, Pa. (Rawle & Henderson, Harrison G. Kildare, Joseph W. Henderson, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal from a decree dismissing a libel in admiralty seeking maintenance and cure and recovery for injuries alleged to be due to unseaworthiness and negligence. The dismissal was premised on the trial court's determination that (1) the vessel was seaworthy; (2) the respondents were not negligent; and (3) "Libellant's injuries resulted solely from his intoxicated condition and, therefore, were caused solely by his own gross and wilful misconduct."

The facts are detailed in the District Court's opinion, E.D.Pa.1952, 104 F.Supp. 489, and are virtually undisputed. Briefly, they are as follows:

Libellant was a member of the crew of the merchant vessel Christian Bergh, a Liberty type ship. On Thanksgiving Day, 1948, the vessel was docked at Piraeus, Greece. Libellant went ashore on liberty in the early evening. He returned several hours later in an intoxicated condition. Wet and chilled from exposure (it had been raining and sleeting), he went directly to the recreation room to dry out his clothes and warm himself. The recreation room was ten feet wide and twenty-five to thirty

feet long. It was furnished with two tables fastened to the deck, one extending forward from the after bulkhead, the other aft from the forward bulkhead. Swivel chairs were anchored on both sides of the tables. Libellant sat in one of those chairs. Its back was twelve inches from a steam radiator. The latter was comprised of separate sections, which together were nine feet long. Its top was thirty-four inches from the bottom of the deck. It was three inches wide, and was secured to the bulkhead by means of brackets in such a manner that the distance between the bulkhead and the radiator was three inches. The temperature of the radiator would have been approximately 230 degrees Fahrenheit if the steam were turned on at normal pressure. There was no evidence as to what the pressure was on this occasion but the ship's log noted that the radiator was "hot" at the time.

There was no cover or guard placed about the radiator in question or any other radiator on the vessel. Similar type vessels (Liberty ships) are equipped with covers or guards of heavy sheet metal which completely cover the front and top of their radiators and afford protection against direct contact with the radiators and from their "excessive heat". Vessels of other types are also equipped with radiator covers or guards.[1]

Fifteen or twenty minutes after libellant sat down, he slumped, because of his intoxicated condition, against the radiator. He tried to push himself off with his hands, but was unable to do so. Some time later fellow crew members discovered him lying on the radiator. He was severely burned, having suffered third degree burns on both hands and on the right side of his face. Approximately one-half of his right ear was burned away.

As we have frequently observed, an appeal in admiralty partakes of a trial de novo and serves to vacate the decree of the district court; the findings of the latter when supported by competent evidence are entitled to great weight and should, therefore, not be set aside on appeal except upon a showing that they are clearly wrong.[2]

In our opinion the record clearly establishes that the absence of covers or guards about the radiators created an unseaworthy condition and that the District Court erred in determining otherwise.[3]

Further we are of the opinion that the District Court erred in concluding as a matter of law that the libellant was not entitled to maintenance and cure.

First as to the issue of seaworthiness:

These principles are well-established:

The vessel and her owner are liable to an indemnity for injuries suffered by seamen in consequence of the unseaworthiness of the ship or a failure to supply and keep in order its appurtenant appliances and equipment;[4] the warranty of seaworthiness "* * * is essentially a species of liability without fault * * *"; and the liability "* * * *is a form of absolute duty owing to all within the range of its humanitarian policy*" (emphasis supplied);[5] it is the traditional policy of the maritime law to afford adequate protection to seamen "* * * through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances * * *"; neither assumption of risk nor contributory negli-

---

1. The Libellant's expert witness, Fink, a Marine Engineer, testified that he had been on some 50 Liberty ships and that the radiators on all of them were protected by covers. Radiators on vessels of other types that he had seen (since 1940) were all equipped with covers.

2. Read v. United States, 3 Cir., 1953, 201 F.2d 758; Crist v. United States War Shipping Administration, 3 Cir., 1947, 163 F.2d 145, 146, certiorari denied 332 U.S. 852, 68 S.Ct. 352, 92 L.Ed. 422.

3. Our determination that unseaworthiness existed makes unnecessary any discussion of the issue of negligence.

4. The Osceola, 1903, 189 U.S. 158, 159, 23 S.Ct. 483, 47 L.Ed. 760; Mahnich v. Southern Steamship Co., 1944, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; Read v. United States, supra Note 2.

5. Seas Shipping Co., Inc., v. Sieracki, 1946, 328 U.S. 85, 94, 95, 66 S.Ct. 872, 877, 90 L.Ed. 1099.

gence bar recovery, of indemnity by the injured seaman; contributory negligence merely serves to mitigate damages.[6]

Applying these principles to the issue here presented we are of the opinion that the vessel and its owner failed to meet the standard of a "high degree of responsibility" and the "absolute duty owing to all within the range" of the humanitarian policy of the maritime law to safeguard seamen from injury.

The recreation room was assigned to the seamen to permit them relaxation during periods when they were not on duty. It was a place where it might reasonably be expected that a seaman returning from shore leave would spend the time remaining on his liberty and it was likewise reasonably forseeable that the returning seaman might have drunk well and not wisely, and as a consequence would not exercise the prudent judgment of a sober man. Keeping in mind the physical factors prevailing in this recreation room—the location of the table and the riveted swivel chairs distanced only twelve inches from a radiator developing 230 degrees Fahrenheit heat when the pressure was on, plus the further factor that when turned, the edges of the chairs were but six inches from the radiator, it requires no great stretch of the imagination to envisage injury by reason of contact with a heated radiator. And not only was such injury forseeable to one who was intoxicated but also to others who might by sheer accident come into contact with the radiator by reason of a misstep or by momentary carelessness.

Further, although the ship was moored to the dock when the incident under review occurred, it is apparent that the uncovered radiator, when heated, constituted a hazard due to the normal pitching and tossing of a vessel at sea with consequent possibility of one being thrown against it.

That the factors mentioned have been taken cognizance of by vessel owners generally is apparent from the testimony that some 50 similar Liberty ships had their radiators covered with heavy metal sheeting and that vessels of other types also were equipped with radiator guards.

In this connection it is appropriate to note that in Carr v. Standard Oil Co. (N. J.), 2 Cir., 1950, 181 F.2d 15, certiorari denied 340 U.S. 821, 71 S.Ct. 52, 95 L.Ed. 603, there was an affirmance of a judgment [7] under a Jones Act [8] claim for injuries suffered by a seaman burned on a hot cylinder head on a mooring winch which was unguarded.[9]

Our determination that the vessel was unseaworthy brings us to the two issues presented—did the libellant's intoxication operate to bar his recovery of (1) damages and (2) maintenance and cure.

▇ As to damages: we are of the opinion that where liability exists by reason of the vessel's unseaworthiness or negligence, an injured seaman is not barred from their recovery merely because he was intoxicated at the time of his injury. Intoxication where it contributes to a seaman's injury, constitutes contributory negligence on his part and operates only to mitigate his damages. As to maintenance and cure: it is our opinion, for reasons later stated, that under the circumstances of this case libellant's intoxication was not a bar to his recovery.

It is true that in a number of cases intoxicated seamen have been denied recovery of damages and maintenance and cure

6. Socony-Vacuum Oil Co. v. Smith, 305 U. S. 424, 431, 432, 59 S.Ct. 262, 267, 83 L.Ed. 265.

7. The judgment was based on a general jury verdict allowing recovery of damages for negligence and maintenance and cure.

8. 46 U.S.C.A. § 688.

9. Counsel for the vessel have cited our ruling in Cookingham v. United States, 3 Cir., 1950, 184 F.2d 213, 215. That case is inapposite. There the libellant slipped on a substance, apparently Jello, while descending a stairway leading to the chill box and there was no evidence that notice of its presence had been given to the ship's authorities. We held that a "transitory unsafe conditions" did not constitute unseaworthiness. In the instant case the ship's authorities knew of the permanent unprotected condition of the radiator.

because they were intoxicated at the time of their injury, but an analysis of these cases discloses the absence of unseaworthiness or negligence on the part of the vessel as a factor in the situation. For example, in The S. S. Berwindglen, 1 Cir., 1937, 88 F.2d 125, where recovery of both damages and maintenance and cure were denied an intoxicated seaman, injured in a fall from a ship's ladder which was in proper condition and well-lighted, the Court noted the factor of the absence of unseaworthiness. Likewise, the United States Court of Appeals for the Second Circuit in Barlow v. Pan Atlantic S. S. Corporation, 1939, 101 F.2d 697, 698, in affirming a denial by the trial court of damages and maintenance and cure where an intoxicated seaman was injured when he fell from a ship's ladder, noted specifically that (1) "The ladder was in perfect condition and well lighted" and (2) the " * * * seaman's injuries occurred solely because of his intoxication * * *." In Lortie v. American-Hawaiian S. S. Co., 9 Cir., 1935, 78 F.2d 819, 821, there was an affirmance of a denial by the trial court of damages and maintenance and cure where the seaman " * * * was injured during a drunken brawl * * *" which he started and neither unseaworthiness nor negligence of the vessel was a factor.[10]

The cases discussed in the preceding paragraph are inapposite on both the issues of damages and maintenance and cure inasmuch as we have found that the vessel in the instant case was unseaworthy while in all of them the vessel was seaworthy and free of negligence.[11] We note that fact because the District Court cited them as authority for its disposition. On that score it must be kept in mind that the District Court found the vessel was seaworthy while we have determined otherwise. Further, it is crystal clear that the libellant here would not have suffered his injuries except for the vessel's unseaworthiness (he would not have been burned); a circumstance absent in the other cases.

We agree of course that there can be no recovery of *damages* in the absence of a vessel's negligence or unseaworthiness. We do not agree that recovery of *maintenance and cure* is forfeited by the mere circumstance that the injured seaman is intoxicated at the time.

It is pertinent to note that the late Judge Dickinson in The Quaker City, D.C.E.D. Pa.1931, 1 F.Supp. 840, in a case where there were absent the factors of either unseaworthiness or the vessel's negligence, held that an injured seaman's intoxication did not per se forfeit his right to maintenance and cure. He there drew a distinction between innocent involvement of an intoxicated seaman in a brawl and one who was its instigator. In the first instance there is no wilful misconduct; in the second there is, Judge Dickinson held.

The District Court in the instant case did not apply the test prescribed in The Quaker City, supra[12] and ruled the libellant's intoxication to be an act of "gross and wilful misconduct" forfeiting his right to maintenance and cure.[13]

As previously stated, we do not agree.

While there has not been an express ruling on this issue by the Supreme Court, that Court has, however, afforded us an illuminating guide in discussing the maintenance and cure rule in a number of cases. The sum total of observations made by the Supreme Court in these cases is that in

---

10. Condon v. Grace Line, D.C.N.D.Cal. 1951, 97 F.Supp. 197, was identical in its facts and disposition.

11. The respondents have not cited to us, nor have we been able to find, any case which has held that an injured seaman is barred from recovery of damages by reason of his intoxication where either unseaworthiness or negligence of the vessel existed.

12. Since counsel for the libellant did not on this appeal cite this case, it is reasonable to infer that they failed to call it to the attention of the trial court.

13. Peterson v. The Chandos, D.C.Or. 1880, 4 F. 645; The Alector, D.C.E.D. Va. 1920, 263 F. 1007; Lortie v. American-Hawaiian S.S. Co., 9 Cir., 1935, 78 F.2d 819; The S.S. Berwindglen, 1 Cir., 1937, 88 F.2d 125; Barlow v. Pan Atlantic S.S. Corporation, 2 Cir., 1939, 101 F.2d 697, 698.

applying the maintenance and cure rule, seamen, even though erring and careless, as wards of courts of admiralty should be the beneficiaries of a liberal attitude in consonance "with the dictates of sound maritime policy."[14]

Thus in Aguilar v. Standard Oil Co. of New Jersey, 1943, 318 U.S. 724 at pages 730–731, 63 S.Ct. 930, at page 934, 87 L.Ed. 1107, the Court stated:

"So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part will not relieve him of the responsibility. * * * Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection. * * * The traditional instances are venereal disease and injuries received as a result of intoxication, *though on occasion the latter has been qualified in recognition of a classic predisposition of sailors ashore.*" (Emphasis supplied.)[15]

Again on page 735 of 318 U.S., on page 936 of 63 S.Ct. the Court stated:

"Certainly the nature and foundations of the liability require that it be not narrowly confined or whittled down by restrictive and artificial distinctions defeating its broad and beneficial purposes. *If leeway is to be given in either direction, all the considerations which brought the liability into being dictate it should be in the sailor's behalf.*" (Emphasis supplied.)

In Farrell v. United States, 1949, 336 U.S. 511, at pages 515, 516, 69 S.Ct. 707 at page 709, 93 L.Ed. 850, the Court stated:

"In Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 932, 87 L.Ed. 1107, * * *. We * * * refused to look to the personal nature of the seaman's activity at the moment of injury to determine his right to award. *Aside from gross misconduct or insubordination, what the seaman is doing and why and how he sustains injury does not affect his right to maintenance and cure, however decisive it may be as to claims for indemnity or for damages for negligence. * * * The seaman could forfeit the right only by conduct, whose wrongful quality even simple men of the calling would recognize—insubordination, disobedience to orders, and gross misconduct. On the other hand, the Master knew he must maintain and care for even the erring and careless seaman, much as a parent would a child.*" (Emphasis supplied.)

■ In Warren v. United States, 1951, 340 U.S. 523, at page 528, 71 S.Ct. 432, at page 435, 95 L.Ed. 503, the Court stated:

"The standard prescribed is not negligence but wilful misbehavior. In the maritime law it has long been held that while fault of the seaman will forfeit the right to maintenance and cure, it must be 'some positively vicious conduct—such as gross negligence or wilful disobedience of orders.'"

■ Applying these concepts of the maintenance and cure rule we are of the opinion that a seaman's becoming intoxicated while on shore leave in a foreign port on a holiday is not an act of wilful misconduct barring his recovery of maintenance and cure for injuries sustained when he slumped in a drunken stupor on an unguarded (and thus unseaworthy) hot radiator in the vessel's recreation quarters.

For the reasons stated the judgment of the District Court will be reversed and the cause remanded with directions to proceed in accordance with this opinion.

14. Aguilar v. Standard Oil Co. of New Jersey, 318 U.S. 724, 732, Note 15, 63 S.Ct. 930, at page 935, 87 L.Ed. 1107.

15. It is significant that in connection with the italicized clause the Court cited, (Note 12, 318 U.S. at page 731, 63 S.Ct. at page 934). The Quaker City, D.C. E.D.Pa. 1931, 1 F.Supp. 840.