In the Matter of Fred M. EDWARDS, Charles W. Edwards, Walter M. Edwards, William N. Blair, G. C. Linsmier, J. E. Redding, E. L. Meley, Jr., L. Z. Walker, C. W. Byrne, Jr., and M. H. Hoffman, individually and as co-partners, doing business as Louisiana Transportation Company,

Praying for exoneration from or limitation of liability.

No. 2626.

United States District Court
E. D. Louisiana,
New Orleans Division.
Jan. 28, 1957.

Cahn, Provensal & Faris, Warren M. Faris, New Orleans, La., for petitioner.

Raymond H. Kierr, Samuel C. Gainsburgh, Donald V. Organ, New Orleans, La., for claimant.

J. SKELLY WRIGHT, District Judge.

Louisiana Transportation Company, owner of the Tug D'Artagnan, filed this petition for exoneration and/or limitation of liability. Wiley J. Odom, seaman on the D'Artagnan, is the only claimant. He asserts that he injured his foot when he inadvertently placed it between the D'Artagnan and the barge to which the D'Artagnan was then moored. He seeks damages and maintenance under the Jones Act, 46 U.S.C.A. § 688, and the general maritime law by reason of his injury. The issues of the validity of the Odom claim, exclusive of the question of limitation, came on to be heard and the court now makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. On June 3, 1953, petitioner, Louisiana Transportation Company, a limited partnership organized and existing by virtue of the laws of the State of Texas, was the owner of the Steel Diesel Tug D'Artagnan and the Steel Tank Barge L. J. Cobb. Claimant, Wiley J. Odom, at the time of his injury, was a seaman serving in the capacity of deck hand aboard petitioners' tug D'Artagnan.

2. The D'Artagnan had a model bow, was 44 feet in length, 14 feet in beam and at the time of the injury herein had a freeboard of about three (3) feet. The barge, L. J. Cobb, to which the D'Artagnan was moored at the time Odom was injured, was a conventional steel tank barge approximately 160 feet in length and 34 feet in width.

3. During the late morning of June 3, 1953 the Barge L. J. Cobb, after having discharged her petroleum cargo, was moored starboard side to Tank Battery No. 1 in the open waters of Quarantine Bay, east of the Passes of the Mississippi River. The D'Artagnan was moored port side to the port side of the L. J. Cobb. The morning was clear, there were light winds and the L. J. Cobb and D'Artagnan pitched gently in the slight swell which prevailed.

4. The L. J. Cobb was secured to the port side, or on the hip of the D'Artagnan, with two taut Manila lines which ran from bitts on the port bow and stern quarter of the respective vessels. Between the tug and barge there were a number of truck and automobile tires approximately six to eight inches in thickness to prevent working and chafing damage to the sides of the two vessels.

5. Deck hand, Wiley J. Odom, claimant herein, together with two other of the D'Artagnan's deck hands, having nothing to do while the D'Artagnan's engine was being repaired, lounged on the

port side of the D'Artagnan's main deck beneath her pilothouse. Claimant sat on a door sill in that area, extended his left leg and rested his left foot on the top of the bulwark that ran down the length of the tug's port side. There his foot remained for about thirty minutes while he conversed with the other two deck hands. During this period he saw the tug and barge working and pitching gently in the swells.

6. Claimant then inadvertently extended his left leg and foot over the bulwark so that the ball of his foot rubbed the port side of the L. J. Cobb which was still working and pitching along with the D'Artagnan. The working and pitching of the two vessels caught claimant's foot between them, injuring it.

7. Claimant was promptly given first aid by the crew of the D'Artagnan and promptly taken ashore to a doctor in Buras, Louisiana, for treatment. Thereafter he was given the maximum cure possible. On January 1, 1954, he returned to work for petitioner and remained in his employment until June 30, 1954. From the time of the injury until claimant terminated his employment on June 30, 1954, he received full wages without interruption.

### Conclusions of Law

1. This court has jurisdiction of this action, and venue is properly laid in the Eastern District of Louisiana. 28 U.S.C. § 1333.

■ 2. A vessel and her owners are liable for injuries suffered by a seaman in consequence of the unseaworthiness of the vessel or a failure to supply and keep in order its appurtenant appliances and equipment. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; The Osceola, 189 U.S. 158, 159, 23 S.Ct. 483, 47 L.Ed. 760.

■ 3. The warranty of seaworthiness is essentially a species of liability without fault, and the liability is a form of absolute duty owing to all within the range of its humanitarian policy. Seas

Shipping Co. v. Sieracki, 328 U.S. 85, 94, 95, 66 S.Ct. 872, 90 L.Ed. 1099.

■ 4. It is the traditional policy of the maritime law to afford adequate protection to a seaman, through an exaction of a high degree of responsibility of owners for the seaworthiness of vessels and the safety of their appliances; neither assumption of risk nor contributory negligence bar recovery of indemnity by the injured seaman. Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 432, 59 S.Ct. 262, 83 L.Ed. 265.

■ 5. The degree of responsibility and the absolute duty of the humanitarian policy of the maritime law owing by boat owners to safeguard their seamen from injury applies to guards and appliances which would protect a seaman from hazards resulting from even normal movement of a vessel in the water, and the duty continues while the vessel is moored. Bentley v. Albatross S. S. Co., 3 Cir., 203 F.2d 270; Carr v. Standard Oil Co., 2 Cir., 181 F.2d 15, certiorari denied 340 U.S. 821, 71 S.Ct. 52, 95 L.Ed. 603.

■■ 6. Under the Jones Act, the negligent failure of a vessel's owners to furnish a seaman safe appliances and a safe place in which to work is actionable. This duty to provide a safe place in which to work includes and applies to places and times of rest or repose. Beadle v. Spencer, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082; Rey v. Colonial Nav. Co., 2 Cir., 116 F.2d 580.

■ 7. To recover damages from petitioner, claimant had the burden of showing that his injury was caused or contributed to by the fault of respondent or the unseaworthiness of the Tug D'Artagnan or Barge L. J. Cobb. De Zon v. American President Lines, Ltd., 318 U.S. 660, 671, 63 S.Ct. 814, 87 L.Ed. 1065; Jamison v. Encarnacion, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082; Lake v. Standard Fruit & Steamship Co., 2 Cir., 185 F.2d 354; Treadway v. Whiteman Bros., 5 Cir., 155 F.2d 1022.

■ 8. The testimony of the eye witnesses, and particularly that of claimant,.

shows that he was injured solely as a result of his own negligence in inadvertently putting his foot in an obviously dangerous position, and accordingly he is not entitled to recover damages from petitioner. Lake v. Standard Fruit & Steamship Co., supra; Meintsma v. United States, 9 Cir., 164 F.2d 976, 1948 A.M.C. 144; Maiden v. United States, 133 F. Supp. 430, 1955 A.M.C. 2318; Pure Oil Co. v. Geotechnical Corp. of Delaware, 94 F.Supp. 866, 1951 A.M.C. 553, affirmed 5 Cir., 196 F.2d 199, 1952 A.M.C. 727, certiorari denied 344 U.S. 874, 73 S.Ct. 165, 97 L.Ed. 676.

9. Claimant having received full wages from petitioner between the time of his injury and the time that he attained maximum possible cure is not entitled to maintenance. Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.

Let a decree be entered according to these findings and conclusions, costs to be taxed against claimant.