**EFSTRATIOS KARANIKOLAS,**
Libellant,

v.

**NAVEGACION MARITIME PANAMA,** **S.A. and THE SS ATLANTIC OCEAN,** her engines, tackle, boilers and appurtenances, Respondents.

United States District Court
S. D. New York.
Jan. 13, 1958.

Lebovici & Safir, New York City, for libellant, Herbert Lebovici, New York City, of counsel.

Hill, Betts & Nash, New York City, for claimant, Atlantic Freighters, Ltd., Robert S. Blanc, Jr., New York City, of counsel.

DAWSON, District Judge.

This is an action tried by the Court without a jury, wherein the libellant, a Greek seaman, sues to recover damages for personal injuries sustained by him while serving as a seaman aboard the Liberian flag vessel known as the SS Atlantic Ocean.

The Court finds the following facts:

1. Respondent Navegacion Maritime Panama, S.A., a Panamanian corporation, was at the times of the events in question the owner of the merchant vessel known as the Atlantic Ocean which flew the flag of Liberia. This respondent has not been served and has not ap-

peared in the action. The vessel was libelled, however, and an answer was interposed by Atlantic Freighters, Ltd., who claims to be its present owner. The Court has jurisdiction over the respondent vessel.

2. The non-statutory general maritime law of the United States has been adopted as the general maritime law of Liberia.

3. The libellant was a seaman on board the SS Atlantic Ocean, having started work on her on January 28, 1951. Prior to the incident involved in this action, while serving on the SS Atlantic Ocean, libellant had twice gotten a foreign substance into his left eye while chipping rust. The first time was in 1951 while the ship was at Karachi, Pakistan; the second time was in October, 1952, while the ship was at Mormugao, a Portugese port in India. Each time the libellant was sent to the doctor, his eye was cleaned out and he returned to work with apparently no lasting results. It appears without contradiction that for several months prior to the incident which gives rise to this action libellant had no trouble with his eyes and the Court concludes that the previous injuries to his eye were not the proximate cause of the damage of which he now complains.

4. On December 20, 1952, while the vessel was at Ceuta, Spanish Morocco, and about to leave that port, libellant was ordered to turn out the cargo lights on the aftermast of the vessel. The switches for turning out these lights were located in a switch box inside a port compartment or storage compartment of the aftermast house of the vessel. In this storage compartment there was a ceiling light that could be turned on or off by a wall switch on the left side of the doorway through which one entered the compartment.

When libellant entered the compartment it was dark inside and outside. As he stepped through the doorway he flipped the switch to turn on the ceiling light. The light did not go on. He testified that the same thing had happened to

him sometime previously. He nevertheless proceeded to enter the compartment in the darkness and to try to reach the switch box containing the switches for the cargo lights which were located to the rear of the compartment on the right hand bulkhead. It appears from the testimony that a pile of ropes and guy wires had been stored in the compartment. As libellant made his way in the darkness toward the switch box he collided with the ropes and wires and brushed his left eye on a wire which was sticking out from the pile of ropes and guy wires. He felt a slight pain in his eye but continued to stretch over the pile of ropes and guy wires until he could reach the metal box in which the switch was contained for operating the cargo lights. He then actuated this switch and turned off the cargo lights. He made his way out of the compartment, returned to the deck and reported to the mate who gave him his orders. He told him, and this is confirmed by the testimony of the mate, that he had hurt his eye and it was paining him.[1] The mate examined the eye but found no bleeding or visible sign of injury. He directed the libellant to continue with his work and libellant did continue working. On the next day libellant complained to the Chief Mate of the injury to his eye. The Chief Mate used a lotion on the eye and applied cotton to it and a bandage to protect it. This type of first-aid treatment continued for several days. Libellant continued working but about January 1, 1953, some eleven days after the accident, he complained to the Master of the continued pain in his eye and the Master relieved him from further work until the end of the voyage.

The ship arrived at Brooklyn, New York, on January 8, 1953. On the following day the libellant was sent by the Master to get medical aid for his eye. He was examined by Dr. Brikates, a physician employed by the ship. The physician found that libellant had a severe ulcer of the cornea of the left eye. Libellant was referred by this physician to the New York Eye and Ear Infirmary, which he entered as a patient on January 10, 1953. The diagnosis there was "hypopyon ulcer of the cornea of the left eye." Libellant remained in the hospital until January 26, 1953, at which time he was discharged as "improved." After leaving the hospital libellant made several further visits to Dr. Brikates. After these visits, and with the pain still continuing, he called on the company's representative in New York for further medical care. The Port Captain, instead of referring him to someone for further medical care, told him to go back to work and sign up with a ship. He refused to give libellant any maintenance. At that point libellant engaged an attorney. The attorney sent him to Bellevue Hospital which he entered on February 4, 1953. The diagnosis on admission was "traumatic cataract of the left eye" referrable to a "healed corneal ulcer and abrasion." He was discharged from this hospital on February 14, 1953 as "improved." Libellant testified that the pain continued in his left eye until March or April, 1957, and that he had practically no vision in the left eye. He nevertheless went back to work as a seaman on August 27, 1953 and has worked regularly since that time.

5. Libellant's wages on the SS Atlantic Ocean at the time of the accident and thereafter were at the rate of £ 36 per month, plus overtime. No evidence as to overtime or as to the average monthly or annual wage of libellant was presented. The parties stipulated that a pound was to be converted at the rate of $2.82 per pound. This means that the monthly wages of the libellant were approximately $101.52.

6. Libellant complains that he has no vision in the left eye and in order to get

1. Respondent has referred to certain obvious inconsistencies between the testimony of libellant on his pre-trial deposition and at the trial. The Court does not find that these inconsistencies are such as to destroy the credibility of the libellant on the essential elements of the claim.

a job on a ship he has to sign a waiver with respect to this eye. Apparently this did not prevent his getting work nor does he claim that it has resulted in any loss of wages to him since the time he has gone back to work. The medical evidence offered by the libellant was to the effect that a hypopyon ulcer may be caused by a slight abrasion of the eye and the infection resulting therefrom, and may destroy the cornea. A minor type of accident may produce this result and may cause loss of vision in the eye. When the ulcer heals the scar tissue—or cataract—may block vision. The doctors who testified for the libellant indicated that libellant now has vision of 20/200 in his left eye, which is uncorrectible and will be permanent, and that it is the equivalent of "industrial blindness" in this eye.

The Court concludes that the vessel was unseaworthy in that the light in the port compartment did not operate when the light switch was activated, even though it was a part of the ship in which libellant, as well as other seamen, were directed to enter. The Court further finds that this unseaworthiness was the proximate cause of the injury to libellant's eye since it left the compartment in darkness and made it possible thereby for him to injure his eye by coming into contact with something stored therein.

Claimants contend, however, that even if the ship was unseaworthy libellant was contributorily negligent and may not recover. This misstates the rule. Contributory negligence does not bar a recovery in admiralty. However, evidence of contributory negligence will be considered in the determination and mitigation of damages arising from the ship's unseaworthiness or negligence. Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143;

Socony-Vacuum Oil Co. v. Smith, 1939, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Bentley v. Albatross S.S. Co., 3 Cir., 1953, 203 F.2d 270; Ahlgren v. Red Star Towing & Transptn. Co., Inc., 2 Cir., 214 F.2d 618, 1954 A.M.C. 1504; John A. Roebling's Sons Co. of New York v. Erickson, 2 Cir., 1916, 261 F. 986. In this case the Court finds that libellant was contributorily negligent. Libellant testified that the storage room was dark, that he did not know what was in it but that he none the less entered the compartment and even though the ceiling light did not work he continued forward in the compartment to try to reach the switch for the masthead lights. Libellant further testified that he had known the light for the compartment had not worked at a time five months previous. Libellant admitted that he did not ask for a flashlight nor go back to his room to get his own flashlight.[2] · Libellant's injury admittedly occurred after he had found that the compartment light did not work. The Court finds that the failure of libellant to get a flashlight or other means of illuminating the interior of the storage compartment before continuing forward in the compartment is, under the circumstances in this case, a negligent act which contributed to the injury libellant incurred. A storage compartment aboard a ship may be filled with any manner of dangerous objects and it was a relatively simple and sensible matter for libellant to have obtained a flashlight. With such a light his injury probably would not have occurred. The Court therefore will consider this contributory negligence of libellant as a factor in mitigation of the damages to which he is entitled because of the unseaworthiness of the ship. The Court finds that libellant's own negligence contributed 30% to the damages sustained by libellant.

2. "Q. Did you have a flashlight with you? A. No, I didn't.
"Q. Did you have a flashlight in your room? A. Yes, I did.
"Q. But you didn't go to get the flashlight? A. No, I didn't.

"Q. And you didn't ask the third officer or anyone else for a flashlight at that time? A. No, I didn't.
"Q. You didn't know, as you stepped into the compartment in total darkness, what was in the compartment? A. No, I did not." (Transcript, p. 23)

Under his unseaworthiness claim libellant seeks to recover damages for his pain and suffering due to the loss of sight in his eye and past and prospective loss of future wages. Libellant maintains that he will be subject to three or four months of unemployment each year as a result of the fact that when employment is not available for all seamen ships will hire men with two good eyes in preference to himself. There was no competent proof of the extent of prospective loss of wages; and it does appear that libellant has been able to secure employment as a seaman in the period subsequent to his injury. The Court finds that a proper award to libellant for loss of sight in his left eye and for pain and suffering would be $10,000. However, since the Court has found that 30% of the damages were caused by libellant's own negligence the Court reduces this amount to $7,000.

Libellant claims maintenance and cure and loss of wages from the time he left the ship on January 10th to March 31st when he had received maximum cure. The amount of $5 per diem has been stipulated by the parties for maintenance, and the Court finds libellant's daily wage to have averaged about $3.36. Libellant was in the New York Eye and Ear Hospital from January 10th to January 26th, and in Bellevue Hospital from February 4th to February 14th. For these periods he may not claim maintenance. The Court therefore finds libellant entitled to maintenance for the periods of January 26th–February 4th, February 14th–March 31st, which is 54 days at $5 a day, or $270, and to loss of wages from January 10th–January 26th and February 4th–14th, 26 days at $3.36 a day, or $87.36.[3]

The Court concludes that libellant is entitled, as against the vessel respondent the SS Atlantic Ocean, to $270 for maintenance, $87.36 for loss of wages, and $7,000 for pain, suffering and permanent injury to his eye, making total damages of $7,357.36.

Submit decree on notice.

---

3. Libellant is not entitled to loss of wages and maintenance for the same periods. Evans v. Schneider Transportation Co., 2 Cir., 1957, 250 F.2d 710. The Court therefore has awarded maintenance to libellant, as the higher figure, wherever he is entitled to a choice between maintenance and lost wages.