Lyle FRITZ, a minor, by Ray Fritz, his Guardian ad litem, and Ray Fritz, individually, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 3918.

United States District Court
D. North Dakota,
Southeastern Division.

April 22, 1963.

Mart R. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, and Gene P. Johnson of Van Osdel & Foss, Fargo, N. D., for plaintiffs.

John O. Garaas, U. S. Atty., Fargo, N. D., for defendant.

RONALD N. DAVIES, District Judge.

This action is brought under the Federal Tort Claims Act by Lyle Fritz, a minor, by Ray Fritz, his guardian ad litem, and Ray Fritz, individually, to recover damages sustained by the Plaintiffs when Lyle Fritz, then a boy of 15 years, suffered the loss of an eye while on a fox hunt by reason of the discharge of a "coyote getter" containing cyanide which had been installed on the farm of one Louie Christensen near Nome, North Dakota.

The "coyote getter" in question was one of eight placed on the Christensen farm by one Milford Fretz, a mammal control agent of the Fish and Wildlife Service.

The case was tried to the Court without jury. Twenty-five witnesses testified and thirty exhibits were received in evidence.

On December 20th, 1959, the Plaintiff, Lyle Fritz, his older brother, Roger, and numerous men and boys from the Enderlin, North Dakota, area gathered at Enderlin to participate in a fox hunt sponsored by the Veterans of Foreign Wars to raise money for the "March of Dimes." The group went by truck to the Harry Sabe farm where the decision was made to hunt foxes on the Louie Christensen farm. The truck drivers thereupon moved along assigned routes, dropping off the hunters in a manner calculated to drive the foxes toward the center of the hunting area in an encircling movement.

Prior to this time on or about October 7, 1959, Milford Fretz, the mammal control agent, at the request of Louie Christensen who had lost a number of turkeys to foxes came upon the Christensen land and set up eight of what he described as "humane coyote getters." (See Plaintiffs' Exhibit 3 for location on the land).

The "coyote getter" (Plaintiffs' Exhibit 1), described by the witness, Milford Fretz, was a metal tube seven inches long in which is inserted a cyanide

pellet and on the side of which there is a triggering device. Superimposed on the top thereof is a scented shell holder or cap which, when the "coyote getter" is imbedded in the ground, is exposed about one and one-half inches to sight.

The mammal control agent testified he had placed on the land four orange-red caution signs which when folded, since the signs included repetition of the caution in Spanish, measured approximately seven and a half inches by six and a half inches. (See Plaintiffs' Exhibit 3 for location on the land). The Wildlife agent did not place or cause to be placed upon the premises any "no hunting" or "no trespassing" signs. Strangely, although the Wildlife agent testified Mr. Christensen had "no hunting" signs posted on December 20th, 1959, Christensen himself testified he did not post his land until the day after Lyle Fritz' accident.

The following colloquy between Mr. Louie Christensen and the Court is significant:

"THE COURT: Mr. Christensen, for the purposes of clarification, I believe you indicated a moment ago that the entire group stopped at Sabe's before taking up the hunt?

"THE WITNESS: Yes.

"THE COURT: Now, Mr. Christensen, you have a voice that would disturb the unwary, can you tell me, sir, why you didn't tell the—warn the whole assembled group at the Sabe farm of these traps?

"THE WITNESS: The Federal Wildlife Service through their agent, Mr. Fretz, told me that these traps are not dangerous if they were not tampered with. Therefore, it did not seem too important at that moment.

"THE COURT: Why did you then tell Mr. Sabe and Mr. Martin, did you think you should warn only them?

"THE WITNESS: No.

"THE COURT: But you had the opportunity to warn the entire group at one time, did you not?

"THE WITNESS: Well, by the time that we had decided what section to hunt or that is where to let off our group, part of the trucks were already leaving, leaving the yard of the Sabe place.

"THE COURT: Now Mr. Christensen, you say that the Wildlife people told you these weren't dangerous unless tampered with. You knew if anybody struck them or touched them, they would be discharged, didn't you?

"THE WITNESS: No, I did not.

"THE COURT: You didn't know that?

"THE WITNESS: No.

"THE COURT: You weren't told this?

"THE WITNESS: I was told that they had to be pulled upward in order to be discharged.

"THE COURT: You didn't think hunters could do that, or did you?

"THE WITNESS: It is possible, but I didn't think anyone would do so.

"THE COURT: Mr. Christensen, why did you post your land the day after this accident?

"THE WITNESS: Because I thought if there was the slightest possibility that the accident could be repeated, the effort would be well worth the time."

Lyle Fritz, carrying his 16 gauge, single barrel, pump shotgun, came upon two dead foxes and testified that while he was trying to figure out why the animals were dead, "Bang, it happened."

The most credible evidence indicates that the boy, totally unfamiliar with a "coyote getter," accidentally stepped on the trigger mechanism which was about flush with the ground and that the pellet and cyanide struck him in the right eye necessitating hospitalization

and subsequent removal of the eye. It must be remembered that the "coyote getter" was imbedded vertically in the ground with only approximately one and one-half inches showing, and that witnesses testified it appeared to be the bare stalk of a tumbleweed or an end of a cornstalk and others similarly described its appearance. Like many of the hunters, Lyle Fritz testified he had never heard of a "coyote getter" or a spring gun before.

The testimony disclosed conflicting statements as to what warnings were given the hunters concerning the existence of the "coyote getters" on the Christensen farm. Christensen himself testified that at the Harry Sabe farm he had spoken to Mr. Sabe and Mr. Martin about warning the others, and there was testimony that there had been some oral warnings shouted. However, a number of witnesses testified they heard no warning call at all, and the Court is satisfied from the evidence that Lyle Fritz did not hear any warning cry concerning the existence of "coyote getters" on the land.

■ The Government's contention that the acts of the Defendant were discretionary functions clothing it with immunity from suit and liability under Title 28 U.S.C.A. § 2680, I reject out of hand. Indian Towing Company v. United States (U.S.Sup.Ct.1955) 350 U. S. 61, 76 S.Ct. 122, 100 L.Ed. 48; Dahlstrom v. United States (8th Cir. 1956) 228 F.2d 819; Worley v. United States (D.C. Oregon, 1952) 119 F.Supp. 719.

Chapter 12–27–26, North Dakota Century Code, provides:

"Every person who sets any spring or other gun or trap or device, operating by the firing or exploding of gunpowder or other explosive, and leaves or permits the same to be left, except in the immediate presence of some competent person, shall be deemed to have committed a misdemeanor; and the killing of any person by the firing of a gun or other device so set shall be deemed to be manslaughter in the first degree."

Chapter 12–27–26.1 provides:

"The provisions of section 12–27–26 shall not be construed to prohibit the use of any device, which may be approved by the state game and fish commissioner as hereinafter provided, which is operated by the explosion of small amounts of gunpowder or other explosive, and which device is designed to discharge poison into the mouth of a wolf, coyote, fox, wildcat or other predator, upon the grabbing or seizing of the bait attached to such device by such predator, *and which device does not discharge any ball, slug, shot or other missile,* and thus endanger the life and limb of any human being or animal. Such device, operated by the explosion of small amounts of gunpowder or other explosive, designed to discharge poison into the mouth of such predator, and which device does not discharge any missile, shall nevertheless, be legal only if set not less than one hundred feet from any federal, state or approved county highway, and not less than five hundred yards from any rural school while functioning, or any inhabited dwelling without permission of the resident of said building; nor may any such device be used on the land without the permission of the owner or operator." (Italics supplied).

■ The Government claims that the "coyote getter" falls within the exceptions of 12–27–26.1.

The "coyote getter" in the instant case *does* discharge a "ball, slug, shot or other missile."

Missile is defined in Webster's New International Unabridged Dictionary, Second Edition, as follows: "A weapon or object thrown, or projected or intended to be projected."

The uncontroverted testimony of Dr. Calvin K. Fercho, ophthalmologist, conceded by both sides as an expert in his field, shows that Lyle Fritz' right eye was struck by a solid object. The pel-

let or other object discharged by the "coyote getter" into the eye of Lyle Fritz was a slug or "other missile" within the meaning of the North Dakota law, and the use of the "coyote getters" which is the subject of this lawsuit was in violation of that law.

The Plaintiffs here have clearly borne the burden imposed upon them by proving every essential element of their case by a preponderance of the credible evidence adduced; that the Defendant was negligent in employing the "coyote getters" in violation of North Dakota state law, that it was negligent in wholly inadequately posting the area with caution signs when it knew or ought to have known that the farm country in question could be, would be and has been hunted; that the injury resulting in the loss of the Plaintiff, Lyle Fritz' eye was due to the negligence of the Defendant and was the direct and sole proximate cause of the injury; and that there was no contributory negligence whatever on the part of the Plaintiffs.

Having carefully considered the injuries sustained, pain and suffering caused Lyle Fritz, the expense incurred by the Plaintiff, Ray Fritz, thus far and fairly to be anticipated in the future, and being aware of the life expectancy of the Plaintiff, Lyle Fritz, as stipulated to by counsel and the effect of the loss of Lyle Fritz' eye on his future life and earning capacity, the Court concludes that the Plaintiff, Ray Fritz, is entitled to judgment against the Defendant in the sum of $2,500.00 as prayed for, and that the Plaintiff, Lyle Fritz, is entitled to judgment against the Defendant in the sum of $62,500.00.

The necessary instruments to effectuate this Memorandum Opinion will be prepared by the attorneys for the Plaintiffs and transmitted through the Clerk of this Court with the least practicable delay.

This Memorandum is considered compliance with Federal Rules of Civil Procedure, 52(a), 28 U.S.C.A.

It is so ordered.