**Thomas C. OWEN, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. No. 65–998.**

United States District Court
S. D. California,
Central Division.

March 15, 1966.

Magana, Olney, Levy, Cathcart & Gelfand, by Leo Gelfand, Los Angeles, Cal., for plaintiff.

Manuel L. Real, U. S. Atty. for Southern Dist. of California, by Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civ. Div., and Clarke A. Knicely, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

THURMOND CLARKE, District Judge.

This action arises under the Federal Tort Claims Act. Plaintiff, a retired Marine Corps gunnery sergeant, seeks to recover damages for an eye injury suffered in the course of an examination at the El Toro, California, Marine Corps Air Station.

The facts are not in dispute:

For about three days prior to April 10, 1965, plaintiff had been bothered by tears in his right eye and pain behind the eyeball. On April 10 he went to the station hospital for examination.

Lt. Edward M. Jewusiak, a Navy physician, undertook an eye examination. His tests showed plaintiff then had visual acuity of 20/25 in each eye.

The officer then prepared to test the tension in plaintiff's right eye by use of a tonometer, a measuring device placed

directly on the eyeball. Preparatory to using the tonometer, the doctor placed anaesthetic drops in the patient's eye. He explained that otherwise the sensitive eyeball would not be able to bear the weight of the instrument.

The examining physician and other witnesses testified that the blade of the instrument (the part coming into direct contact with the eye) must be sterilized in order to avoid the possibility of infection. This may be accomplished by passing the blade through an alcohol flame, by wiping it with a sterilizing solution, or by inserting the instrument in a Sklar sterilizer, an electric device made especially for this purpose. Dr. Jewusiak elected to use the Sklar sterilizer.

The device, described by witnesses as an "oven", uses dry heat to raise the temperature of the tonometer blade to approximately 475 degrees Fahrenheit. Before being placed on the eye, the blade must be cooled. This may be accomplished by turning the oven off and leaving the tonometer in place for seven to ten minutes. A plate on the sterilizer states the instrument will heat to 475 degrees; it does not set out directions for cooling. At the time of this incident, the doctor had not been given instruction for cooling the tonometer.

After heating the tonometer, the officer removed it from the oven and held it in the air for approximately two minutes. Then, without ascertaining whether it was still hot, he placed the instrument on plaintiff's anaesthetized eye. The cornea immediately became cloudy.

Realizing the eye had been injured, the doctor placed a patch over it and telephoned the Naval hospital at Camp Pendleton, California, where an eye specialist was available. He arranged to have plaintiff transported there by ambulance.

Comdr. Harold Esterly, Jr., chief of ophthalmology at Camp Pendleton, examined plaintiff. He found the right eye markedly infected and inflamed. The cornea was white. Plaintiff had only light perception in that eye.

Plaintiff remained in the hospital three days. During this period he required analgesics to deaden pain. At the end of three days such medication was no longer necessary.

When plaintiff was discharged from the hospital, his vision was badly impaired. With the right eye he was able to count the fingers of a human hand at a distance of no more than 18 inches.

Plaintiff returned to the hospital twice for outpatient care. He then went to an ophthalmologist in private practice for further treatment. Plaintiff testified this was not because of any dissatisfaction with the treatment at Camp Pendleton, but simply because of the distance from his home to the hospital (100 miles).

At the time of trial, 10 months after the accident, plaintiff had visual acuity of less than 200/2200 in the right eye; this degree of vision is classified as industrial blindness. There is no expectation of improvement.

Prior to the accident, plaintiff had been employed as an aircraft structures mechanic for North American Aviation, Inc. He has an eleventh-grade education, having left high school to enlist in the Marine Corps during World War II. He has passed high school equivalency tests, and has twice enrolled for junior college work. Plaintiff is 42 years of age; he is married and has three minor daughters.

Despite his handicap, plaintiff has been able to continue his work at North American. He expresses a sincere determination to complete his college work, even though intensive reading is now physically difficult for him. The court can express only admiration for the courage and the absence of acrimony with which plaintiff is facing his problem.

Dr. Warren A. Wilson, an ophthalmologist appearing for the government, testified plaintiff has a corneal scar but the remainder of the cornea is clear, and it appears the retina and the nerves are undamaged. He recommends that plaintiff have a corneal transplant, a procedure involving removal of the cornea

from a cadaver within an hour after the donor's death and transplanting it to plaintiff's injured eye. The operation obviously cannot be scheduled in advance. If it is undertaken, plaintiff must await availability of a cornea from a donor, and must stand ready to submit to surgery at any hour, on short notice. The operation, if successful, may restore from 10 per cent to 90 per cent of the vision of the right eye.

The same procedure was recommended by Dr. E. Dalton Peelle, an ophthalmologist testifying for plaintiff. The latter physician estimated there is an 80 per cent chance such an operation will restore plaintiff's vision. The same probability of success was predicted by Dr. Esterly. Both witnesses emphatically recommended the surgery be done by a prominent specialist in San Francisco.

The government does not deny liability. The sole question before the court is the issue of damages.

The court wishes to commend counsel for both parties for the candor and the spirit of fairness evident throughout this proceeding.

Placing a dollar value on the loss of a human eye is a difficult and delicate problem. There are certain special damages to which the court finds plaintiff is entitled: his doctor bills, amounting to $455.00; drug bills of $186.46; loss of wages amounting to $1,971.40.

Prospective medical expenses may be predicted with some degree of accuracy. Expert witnesses estimate the surgical fee for a corneal transplant at $2,000.00. Hospital fees are estimated at $500.00. In addition, plaintiff is entitled to compensation for travel expenses, time to be lost from work, and expenses for lodging near the hospital during the initial recovery period. There is a possibility the operation may have to be undertaken more than once. The court finds a reasonable sum for future medical expenses and related items is $3,500.00.

As to the question of general damages, the court looks for guidance to the more recent pronouncements of other United States courts in actions involving similar injuries. Concededly, actions decided prior to the present inflationary period are of little aid in fixing a realistic sum as general damages.

In so doing, the court does not wish to be understood as seeking an average figure, a procedure which would approximate the unlawful "quotient verdict."

In Wibye v. United States, 87 F.Supp. 830 (N.D.Cal.1949), aff'd, 191 F.2d 181 (9th Cir. 1951), another action under the Federal Tort Claims Act, the court awarded $45,000.00 total damages to a 40-year-old building construction superintendent earning $125 per week, for loss of vision in one eye and other injuries.

In Deitz v. United States, 228 F.2d 494 (3rd Cir. 1955), the court affirmed an award of $45,573.72 to a 26-year-old seaman for loss of virtually all sight of one eye.

In Zahn v. Ford Motor Company, 164 F.Supp. 936 (D.Minn.1958), aff'd, 265 F.2d 729 (8th Cir. 1959), the court gave judgment on a verdict of $26,350.00 to a 27-year-old construction equipment operator for loss of sight of one eye.

In Alexander v. Nash-Kelvinator Corporation, 271 F.2d 524 (2d Cir. 1959), the court held an award of $100,000.00 was adequate compensation for loss of an eye and other injuries suffered by an employed woman.

In Rivers v. Leitman, 317 F.2d 102 (4th Cir. 1963), the court held not excessive an award of $140,000.00 for loss of one eye by a 30-year-old man employed in a family business at $9,000.00 a year.

In Efstratios Karanikolas v. Navegacion Maritime Panama, 157 F.Supp. 602 (S.D.N.Y.1958), the court awarded $10,000.00 (less $3,000.00 for contributory negligence) to a seaman for an injury causing industrial blindness in one eye.

In Fritz v. United States, 216 F.Supp. 156 (D.N.D.1963), appeal dismissed, 324 F.2d 959 (8th Cir. 1963), an action under the Federal Tort Claims Act, the court

awarded a 15-year-old boy $62,500.00 for loss of one eye.

In the present case, pain and suffering have been minimal considering the seriousness of the injury. Plaintiff, a comparatively young man, has been visually handicapped for nearly a year. He faces a delicate operation which may or may not be successful. It may have to be repeated one or several times, still with no assurance of success. There is a definite possibility plaintiff may never recover use of the injured eye.

Weighing all these factors, the court finds plaintiff is entitled to general damages of $60,000.00 in addition to the special damages set forth.

Counsel for plaintiff shall prepare findings of fact, conclusions of law, and judgment in accordance herewith.