Angelina E. MURPHY, as guardian of Thomas J. Murphy, Appellant,

v.

George LIGHT, Appellee.

No. 15434.

United States Court of Appeals Fifth Circuit.

Aug. 18, 1955.

Rehearing Denied Sept. 29, 1955.

Arthur Roth, Monte K. Rassner, Miami, Fla., for appellant.

Daniel Neal Heller, Miami, Fla., for appellee.

Before RIVES and CAMERON, Circuit Judges, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This libel in personam for seaman's maintenance and cure under the general maritime law was brought by Thomas J. Murphy against appellee George Light, owner of the 26′ Steelcraft Cruiser, "Jesse II." On a former appeal, a "summary judgment" for the defendant, appellee, was reversed and the cause remanded for trial. Murphy v. Light, 5 Cir., 211 F.2d 824. The trial was conducted under a considerable handicap to both parties due to the fact that Murphy had become non compos, and his wife, appointed as his guardian, had been substituted in his stead. The district court made findings of fact and conclusions of law,[1] and based thereon, again dismissed the libel.

In addition to the facts found by the district court, the following facts, testified to by Olsen, the seaman who committed the assault on Murphy, were not disputed:

"We proceeded up river for about one hour and then fog set in. As the Jesse was towing us, she seemed to be going in all kinds of directions. First she went south, then she went north and she was proceeding in all directions. We blew our horn and made Murphy understand that he

1. "Findings of Fact:

"1. The Court has jurisdiction of the parties and the subject matter.

"2. The libelant, Murphy, was employed by the respondent to bring the Yacht Jesse from New York to Miami, Florida.

"3. On December 9, 1952, the libelant had another vessel in tow on the Intercoastal Waterway.

"4. The libelant had taken the vessel in tow to allow him the company of the other crew during his trip, as he was alone aboard the Jesse.

"5. Murphy's proctor makes claim that the Jesse was in distress and had lost her compass and that the towing operations were, therefore, incident to the voyage of the Jesse, and hence the dispute between Olsen and Murphy was directly connected with the Jesse's voyage. With this I do not agree. Jacobsen, the master of the Marbara, did take over the wheel of the Jesse when, after the first fastening of the tow line, the Jesse was apparently off course. But a second fog set in and incident to dropping anchor with Jacobsen at the wheel of the Jesse, Murphy was at the stern of the Jesse and was in constant conversation with Olsen, who was hauling the line on the Marbara. The assault by Olsen was provoked by the insulting language used by Murphy toward Olsen.

The Jesse is not to be held liable for maintenance and cure of Murphy, who suffered the assault by Olsen under these circumstances.

"6. The Marbara was not in distress, which brought about the towing by the Jesse. Murphy's contract with Light contained no provision as to towing another vessel, even in distress. Though under the law of the sea, the distress of the Marbara and the towing under those conditions would lend some color to Murphy's claim that the passing of insulting language by Murphy, with the assault by Olsen, was incident to the voyage. But such is not the case. Murphy was evidently lonely. He was the sole person on the Jesse and he evidently wanted company in this part of the voyage. The towing was brought about by the personal whim of Murphy.

"7. The injury suffered by Murphy and the resulting hospitalization were due solely to the original libelant's own gross misconduct and they did not occur in the service of the Yacht Jesse.

"8. The libel should be dismissed, without cost to the respondent.

"Conclusions of Law:

"1. The libel should be and the same is hereby dismissed.

"2. The costs of this action should be assessed by the Clerk against the libelant."

was not going on the right course. We got the answer that his compass was out of order. We went alongside the Jesse and Captain Jacobsen entered Murphy's boat with a spare compass and then Jacobsen took over Murphy's boat and piloted up the river."

Jacobsen, the master of the Marbara, did not testify. There was no dispute that Murphy incurred some expenses for maintenance and cure of the injuries suffered in the assault, though the extent of such injuries and consequent expenses is left in considerable doubt by the frank testimony of Murphy's wife and guardian:

"Q. When did this nervous condition begin? When is the first time you noticed it?

"A. This kind of trouble I have been having with him for the past two years, since I come down here to Florida. That is about—going on two years.

"Q. Did you notice that condition in him prior to the time he was on the Jesse?

"A. He always was able to take care of himself and support us in the proper manner, but now we are having so many cases where we go back and forth into court on all of these accidents that have happened to him, one right after the other for the past eighteen months."

There is no denial that, though Murphy was the master of the vessel, he came within the class of seamen entitled to maintenance and cure under the general maritime law. See Warner v. Goltra, 293 U.S. 155, 158, 55 S.Ct. 46, 79 L.Ed. 254. It is clear that at the time of the assault, Murphy had not entirely departed from the duties of his employment. He was still on board and in the service of the vessel "Jesse II". Regardless of the original cause of the tow, the Captain of the Marbara had been rendering service to the "Jesse II" at the wheel with his spare compass.

On the other hand, there is ample evidence to sustain the finding of the district court that, "The assault by Olson was provoked by the insulting language used by Murphy." The issue narrows as to whether Murphy's insulting and inflammatory language was such gross and willful misconduct as to forfeit his right to maintenance and cure.

 As recently stated by the Supreme Court in Warren v. United States, 340 U.S. 523, 528, 71 S.Ct. 432, 435, 95 L.Ed. 503:

"The District Court held that petitioner's degree of fault did not bar a recovery for maintenance and cure. The Court of Appeals thought otherwise. The question is whether the injury was 'due to the wilful act, default or misbehaviour' of petitioner within the meaning of Art. 2, paragraph 2(b) of the Convention. The standard prescribed is not negligence but wilful misbehavior. In the maritime law it has long been held that while fault of the seaman will forfeit the right to maintenance and cure, it must be 'some positively vicious conduct—such as gross negligence or willful disobedience of orders.' The Chandos, 6 Sawy. 544, 549–550 [4 F. 645]; The City of Carlisle, D.C., 39 F. 807, 813, 5 L.R.A. 52; The Ben Flint, Fed.Cas. No. 1,299, 1 Biss. 562, 566. And see Reed v. Canfield, Fed.Cas.No.11,641, 1 Summ. 195, 206. In Aguilar v. Standard Oil Co., 318 U.S. 724, 731, 63 S.Ct. 930, 934, 87 L.Ed. 1107, we stated the rule as follows: 'Conceptions of contributory negligence, the fellow-servant doctrine, and assumption of risk have no place in the liability or defense against it. Only some wilful misbehavior or deliberate act of indiscretion suffices to deprive the seaman of his protection.' "

 Though enforcement of a shipowner's broad obligation for mainte-

nance and cure may appear harsh in this instance, we think the rule of the Warren case, supra, was purposely adopted and should be liberally applied in favor of a seaman, as a ward of admiralty, who sustains injury while in the service of a vessel. Giving full credence to the testimony as to Murphy's having used insulting language toward Olsen, we think such impropriety on his part was insufficient justification for the personal assault by Olsen resulting in the severe injuries claimed, especially in view of Murphy's undisputed status as master of the "Jesse II" and the testimony contradicting respondent's contention that he had completely departed from the service of that vessel when the assault occurred. We feel a compelling reluctance to apply that same rigid standard of parlor language and etiquette between seafaring men which the more fastidious and sheltered among us would comfortably require, and particularly to hold, as appellee would apparently have us do here, that their failure to comply with that standard in their relations with one another constitutes sufficient provocation to justify or condone personal violence, so that injury resulting therefrom would not render the shipowner responsible for maintenance and cure. See Boudoin v. Lykes Bros. S. S. Co., 348 U.S. 336, 339–340, 75 S.Ct. 382, reversing Lykes Bros. S. S. Co. v. Boudoin, 5 Cir., 211 F.2d 618. Cf. Jones v. Lykes Bros. S. S. Co., 2 Cir., 204 F.2d 815, 817. We conclude, therefore, that under the circumstances of this case the insulting language used by Murphy was not such gross and willful misconduct as would forfeit his right to maintenance and cure for any injury which may have resulted from Olsen's assault. Warren v. United States, supra, 340 U.S. at page 528, 71 S.Ct. 432.

We think that the district court has again misapprehended the extent of a seaman's right to maintenance and cure. The judgment is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.