Carl BLOOMQUIST, Plaintiff-Appellant,

v.

T. J. McCARTHY STEAMSHIP COMPANY, Defendant-Appellee.

No. 12410.

United States Court of Appeals Seventh Circuit.

Feb. 18, 1959.

---

Herbert L. Wisch, Chicago, Ill., Herbert G. Lowinger, Chicago, Ill., for appellant.

Joseph V. McGovern, Chicago, Ill., John Arthur Hamilton, Detroit, Mich., Bradley, Pipin, Vetter & Eaton, Chicago, Ill., Foster, Meadows & Ballard, Detroit, Mich., for appellee.

Before SCHNACKENBERG, HASTINGS and KNOCH, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff, Carl Bloomquist, brought this action, on the Admiralty side, for unseaworthiness, Jones Act [1] negligence, maintenance and cure, and (as a separate cause of action for negligence under the Jones Act) failure to provide medical care while plaintiff was aboard ship.

Plaintiff has appealed from the Trial Court's entry of judgment for defendant.

The evidence disclosed the following: Bloomquist, a seaman aboard defendant's Steamer Denmark, docked in Cuyahoga Creek, Cleveland, Ohio, went on shore leave early the morning of July 25, 1957. He was due to return to the vessel at the Republic Steel Plant Dock in Cleveland to stand a noon watch.

While ashore, Bloomquist consumed thirteen to sixteen bottles of beer. When he arrived by taxicab at Gate No. 3, entrance to the area where the vessel was tied up, he engaged in a loud argument with the taxi driver, and the Republic Steel watchman refused to admit him. Bloomquist and other witnesses testified that he was intoxicated at that time.

1. Title 46 U.S.C.A. § 688.

In response to the watchman's call for someone from the ship, Second Mate Paul Milins went to the gate, authorized the watchman to pass Bloomquist, and returned with him to the ship. Milins testified that Bloomquist was standing up at the gate. Both Bloomquist and Milins testified that Bloomquist, without assistance, walked a distance of approximately three city blocks from the gate to the ship, that Bloomquist climbed a steep boarding ladder to the deck without apparent difficulty. Bloomquist said that he was careful to proceed on the outboard side of the ship to avoid danger from unloading equipment in operation on the side nearest the dock. Milins testified that he left Bloomquist in the mess room. Bloomquist denied that he had gone into the mess room. He said that he went forward to the stairway leading down from the hallway, on the same level as the main deck, to the dunnage room and his quarters; that in his intoxicated state, he was left unassisted to make his own way by a steep stairway, (the only ingress and egress to and from his quarters) that this stairway was marked by a sign reading: "Caution, Step Ladder", had a low overhead I-beam, and no non-skid material on its treads other than the original worn metal corrugated protrusions and weathered non-skid material.

While bending his head under the I-beam, Bloomquist lost his footing, fell, and suffered what was later diagnosed as a fracture of his left leg. He testified that it was about half an hour between the time he came aboard and the time he fell.

The Master of the vessel, Captain Kallio, testified that the treads were made of corrugated steel, in good condition, that the stairway was no steeper than customarily found on similar Great Lakes vessels, and that similar overhead beams were also commonly found on such ships. Bloomquist stated that he had been on the ship for a month and a half, used the stairway about ten times daily, and never previously had trouble with it.

Milins and Captain Kallio examined Bloomquist's injured leg, which was swollen and discolored. The Captain and Milins testified that the Captain twice offered to remove Bloomquist for medical treatment, but that Bloomquist declined to go to hospital, said he would be all right in a couple of days, and asked to stay aboard until the ship arrived at Duluth, where he lived. Bloomquist testified that the Captain insisted he stay aboard.

The ship remained tied up at dock for about seven to nine hours, but the Captain sought no outside medical aid. Ice packs were applied to the injury. Plaintiff remained bedridden. His meals were served to him in bed. On July 27, 1957, he was assisted off the ship at Sault Ste. Marie, Michigan. Plaintiff was treated at St. Mary's Hospital in Duluth and the U. S. Public Health Service Hospitals in Sault Ste. Marie and Chicago, Illinois, from which he was discharged fit for duty. Bloomquist disputes this diagnosis. His witnesses, Drs. Smith and Turner, testified that Bloomquist's walk was marked by external rotation of the left foot and painful gait. Bloomquist was not gainfully employed during the period from the injury until the date of the trial. Dr. Turner also testified that application of ice packs was a recognized treatment. The fracture was not diagnosed until X-ray pictures were made at the hospital.

Bloomquist contends that defendant failed in its duty to provide proper medical care. Granted that failure to provide prompt, adequate and proper care to an injured seaman may constitute an actionable tort, the Trial Court found as a fact that such failure had not occurred in this case and that delay in hospitalization in no way aggravated the injury.

Bloomquist contends that defendant was negligent in its performance of its traditional duty to protect a seaman-employee in such state of intoxication as to require special care, once defendant had assumed the duty of his safe conduct

onto the ship and into his quarters; that exposing plaintiff to danger in his disabled condition was actionable negligence under the Jones Act.

The Trial Court found as a fact that the stairway was in all respects sound and seaworthy and free from any defect which caused or contributed to Bloomquist's injury; that the actions of defendant, its officers, agents and employees were in all respects reasonable and proper under the circumstances, including first aid and medical treatment given, and that Bloomquist's injuries were solely the result of his own willful misconduct.

■■ In reviewing the judgment of Trial Court, sitting without jury in Admiralty, we may not redetermine findings of fact unless we find them clearly erroneous. McAllister v. United States, 1954, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20. The findings here were amply supported by the evidence.

In arguing that intoxication is not of itself a bar to recovery, plaintiff relies on McDonough v. Buckeye S. S. Co., D.C. N.D.Ohio 1951, 103 F.Supp. 473, affirmed 6 Cir., 1952, 200 F.2d 558, certiorari denied 1953, 345 U.S. 926, 73 S. Ct. 785, 97 L.Ed. 1357, and Bentley v. Albatross S.S. Co., D.C.E.D.Pa.1952, 104 F.Supp. 489, reversed 3 Cir., 1953, 203 F.2d 270. Both are readily distinguishable from the case before us.

In the McDonough case, an intoxicated seaman was taken from a place of safety at a dock gate, along a narrow and unprotected dock. He staggered, fell twice, and then refused to rise and continue. He was left alone in a place of peril lying on the dock, from which he fell and drowned.

In the Bentley case, the Trial Court expressly found that no cover or guard had been placed on the radiator against which plaintiff, while intoxicated, fell and was burned. The Trial Court also found that some similar type vessels were equipped with covers or guards of heavy sheet metal which completely covered the front and top of the radiators

to afford protection from direct contact with the radiators and from their "excessive heat". On these facts, the Appellate Court held that plaintiff's injuries were caused by the unguarded and unseaworthy radiator.

This case also differs markedly on facts from Stankiewicz v. United Fruit Steamship Corporation, 2 Cir., 1956, 229 F.2d 580, cited by plaintiff, wherein a seaman was injured by an intoxicated shipmate. The seaman brought action on the law side for negligence. The Appellate Court reviewing a directed verdict for defendant, held that there was evidence from which the jury might have found the ship's officers lax in enforcing the ship's rule against bringing liquor aboard.

■ It is uncontroverted that a well established rule in Admiralty holds a seaman not entitled to maintenance for injuries resulting from his own intoxication. Plaintiff, however, sees inconsistency in finding plaintiff not so obviously and highly intoxicated as to require special supervision and assistance not merely aboard the vessel, but all the way to his quarters, and, nevertheless, finding recovery for maintenance and cure barred by willful intoxication.

From a study of the whole case, we cannot agree that any inherent inconsistency exists in a finding that the stairway was seaworthy, that defendant was guilty of no negligence and acted reasonably in the circumstances, and that half an hour later, plaintiff was injured through his own willful intoxication. Both plaintiff and Milins testified that plaintiff walked without staggering when returning to the ship. Plaintiff's own witness, Corlett, testified that later, after plaintiff came aboard, he saw him staggering on deck with a whiskey bottle, partially concealed in a bag, cupped in his hand.

■ Plaintiff assigns as error restriction of examination. The Trial Court considered the condition of the stairway at the time of the fall, and found it seaworthy. Plaintiff did not testify that he

had slipped. It cannot be held error, as plaintiff contends, not to have allowed plaintiff to ask Milins and Seaman Wisner: "Did you have some of that non-skid paint on board?"

We find the proceedings below free from error. The judgment of the Trial Court is affirmed.