James **BENCIC**, Libellant,

v.

**MARINE TRADERS, INC.**, Respondent.

No. 1889.

United States District Court
D. Delaware.

June 15, 1966.

Frank O'Donnell, Stanley C. Lowicki, Hamilton & O'Donnell, Wilmington, Del., John Dorfman, Dorfman, Pechner, Sacks & Dorfman, Philadelphia, Pa., of counsel, for plaintiff.

William T. Lynam, III, Wilson & Lynam, Wilmington, Del., Timothy J. Mahoney, Krusen, Evans & Byrne, Philadelphia, Pa., of counsel, for defendant.

## OPINION

STEEL, District Judge.

This is a maritime action instituted by libellant for maintenance and cure as a result of injuries allegedly sustained on July 22, 1964 while in the service of respondent's vessel, the S.S. NORINA. Jurisdiction exists under 28 U.S.C. § 1333.

Libellant joined the S.S. NORINA on June 1, 1964 and was discharged from the vessel on August 24, 1964. On July 24, 1964 he was examined at a hospital in Karachi, Pakistan, where it was found he had a simple fracture in his right foot. He returned to the vessel and remained on board until it terminated articles in Philadelphia on August 24, 1964. On August 25, 1964 libellant came under the care of the U. S. Public Health Service Clinic in Philadelphia where he remained under treatment until declared fit for duty on October 15, 1964. Under the contract between libellant's union and the respondent, the latter agreed to pay maintenance at the rate of $8.00 per day where maintenance was due.

At the hospital a cast was applied to libellant's right foot with instructions that it should remain in place for at least three or four weeks. Libellant did no work or watch standing during the balance of the trip, although he was wearing a walking cast.

After the foregoing evidence, which appears not to be in dispute, was introduced, libellant rested. Thereupon, respondent moved for a "directed verdict" upon the ground that libellant had not proven that his injury was sustained

"in the service of the ship," since, it was argued, there was no proof of when, where, or how libellant was injured. The motion was denied.[1]

The respondent then proceeded with its defense evidence. This consisted of excerpts from the depositions of Camenos, the Master of the NORINA at the time of the injury, and of Gaughen, its Chief Mate. Related cross-examination and redirect examination was likewise introduced. Excerpts from libellant's deposition, taken by respondent, were also introduced.

Camenos testified that while the NORINA was berthed at Karachi the Chief Mate called him (Camenos) to see libellant coming aboard the ship from the dock. Camenos came on deck at about 2:15 in the afternoon and saw libellant limping up the gangway. His face was bruised, he had a cut on his nose and elbow, and his shirt was in pieces. Camenos said that libellant "was in a big mess." When Camenos asked libellant what happened he said "I had a fight." Libellant was under the influence of liquor. Before this particular time, Camenos said, libellant had never had a limp.

Gaughen confirmed Camenos' testimony concerning libellant's condition when he boarded the vessel, and the fact that libellant said that he had been in a fight. Gaughen, like Camenos, stated that he had never seen the libellant limping before this occasion. Gaughen added that the libellant's injuries "appeared fresh."

Libellant testified that there was no time at Karachi when he came back to the ship with a cut elbow, a cut nose and with a limp. He said "I came back to the ship all right every day I was there, except when my foot was in the cast." He stated that the injury to his foot occurred when he was getting out of his bunk during the NORINA's second week at Karachi.

At the conclusion of respondent's case it again moved for a "directed verdict." Decision on the motion was reserved. No rebuttal evidence was offered by the libellant.

■ While the Court had no opportunity to hear any of the witnesses, the testimony of Camenos and Gaughen is accepted. This establishes that libellant's injury occurred while he was on shore leave. As a corollary, the testimony of libellant that he injured his foot while coming out of his bunk is rejected.

Respondent's basic argument is that libellant cannot recover unless his injury was incurred in the service of the ship, that libellant has the burden of proving that such was the case, that the record fails to disclose the time, place or manner in which libellant injured his foot, and consequently he has failed to carry the burden which is legally his.

■ The law is settled that a seaman cannot recover maintenance and cure unless his injury or sickness occurred in the service of the ship. Farrell v. United States, 336 U.S. 511, 516, 69 S.Ct. 707, 93 L.Ed. 850 (1949). It may be logically argued, however, that a seaman makes out a *prima facie* case of such an injury if he establishes that it took place between the dates specified in the articles of agreement for reporting for duty and the termination of the engagement. When this has been proved, it seems reasonable to impose upon the respondent the burden of rebutting the

---

1. The Admiralty Rules make no provision for a motion for judgment at the close of libellant's evidence. Nevertheless, respondent's motion was in order. Admiralty Rule 44 states that in cases not provided for by the rules or by statute the District Courts shall regulate their practice in such manner as they deem most expedient for the due administration of justice, provided the same is not inconsistent with the Admiralty Rules. F.R.Civ.P. 41(b) authorizes the filing of a motion to dismiss an action after plaintiff has completed presentation of his evidence on the ground that under the facts and the law the plaintiff has shown no right to relief. The motion of respondent was comparable to such a motion.

seaman's *prima facie* case by proving that despite the time of injury, it was incurred otherwise than in the service of the ship. This conclusion is supported by the terms of the Shipowners' Liability Convention, proclaimed by the President October 24, 1936, 54 Stat. 1693, which provides:

1. The shipowner shall be liable in respect of—

   (a) sickness and injury occurring between the date specified in the articles of agreement for reporting for duty and the termination of the engagement;

   \*    \*    \*    \*    \*    \*

2. Provided that national laws or regulations may make exceptions in respect of:

   (a) injury incurred otherwise than in the service of the ship;

   (b) injury or sickness due to the wilful act, default or misbehaviour of the sick, injured or deceased person;

   (c) sickness or infirmity intentionally concealed when the engagement is entered into.[2]

■ The defenses enumerated in paragraph 2 of the Convention are exceptions to the general rule of liability established by paragraph 1. Warren v. United States, 340 U.S. 523, 525–526, 71 S.Ct. 432, 95 L.Ed. 503 (1951). A respondent should therefore have the burden of proving them. The authorities support this view insofar as the defenses enumerated in paragraphs 2(b)[3] and (c)[4] are concerned. While there appears to be no precedent one way or the other applicable to the defense stated in paragraph 2(a), it is only logical to impose upon a respondent who asserts that defense the same burden as exists with respect to paragraphs 2(b) and (c). Sub-paragraph (a) is in *pari materia* with sub-paragraphs (b) and (c) and should be construed with reference to them. 50 Am.Jur., Statutes, § 352, p. 350 et seq. (1948).

■ Under this interpretation of the Convention, libellant has established *prima facie* that his injury occurred in the service of the ship by proving that it was sustained between June 1, 1964 when he joined the NORINA and August 24, 1964 when its articles were terminated. Respondent has not borne its burden of rebutting this *prima facie* showing. There is no merit to the respondent's argument that the libellant failed to establish that libellant's injury occurred during the period of his engagement. Both Camenos and Gaughen testified that they had not noticed libellant limping at any time before he boarded the vessel after the alleged fracas on shore on July 22. It is a reasonable inference that the injury occurred during libellant's shore leave. The mere fact that libellant was injured while on shore leave does not disqualify him from obtaining cure and maintenance. Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951). In Aguilar v. Standard Oil Co., 318 U.S. 724, 734, 63 S.Ct. 930, 935, 87 L.Ed. 1107 (1942) the Court said:

[S]hore leave is an elemental necessity in the sailing of ships, a part of the business as old as the art, not merely a personal diversion.

The voyage creates not only the need for relaxation ashore, but the necessity that it be satisfied in distant and unfamiliar ports. If in those surroundings the seaman, without disqualifying misconduct, contracts disease or incurs injury, it is because of the

---

2. The Convention is set out in Warren v. United States, 340 U.S. 523, 525, 71 S.Ct. 432, 95 L.Ed. 503 (1951). The case holds that the exceptions permitted by paragraph 2 are operative by virtue of the general maritime law and that no Act of Congress is necessary to give them force. 340 U.S. at 526, 71 S.Ct. at 434.

3. 1 Norris, The Law of Seamen § 556 (2d ed. 1962).

4. Lorensen v. Jenney Mfg. Co., 155 F.Supp. 213 (D.Mass.1957); Burkert v. Weyerhaeuser S.S. Co., 350 F.2d 826, 831 (9th Cir. 1965).

voyage, the shipowner's business. * * * [I]t is the ship's business which subjects the seaman to the risks attending hours of relaxation in strange surroundings. Accordingly it is but reasonable that the business extend the same protections against injury from them as it gives for other risks of the employment.[5]

■ In Nowery v. Smith, 69 F.Supp. 755 (E.D.Pa.1946), affirmed per curiam, 161 F.2d 732 (3d Cir. 1947), the Court rejected the argument that a seaman free from wilful misconduct was nonetheless disqualified from maintenance and cure because his injury was sustained in a bar room while he was on shore leave. Of course, a seaman cannot recover for maintenance and cure if his injury was the result of his own wilful misconduct. Kable v. United States, 169 F.2d 90, 93 (2d Cir. 1948). This principle has led to a denial of maintenance and cure to a seaman who becomes sick or injured as a result of his intoxicated condition. 1 Norris, The Law of Seamen, § 602 (2ed. 1962). E. g., Bloomquist v. T. J. McCarthy S.S. Co., 263 F.2d 590 (7th Cir. 1959); Barlow v. Pan Atlantic S.S. Corp., 101 F.2d 697 (2d Cir. 1939); Dailey v. Alcoa S.S. Co., 337 F.2d 611 (5th Cir. 1964).

■ This latter principle has no application to the case at bar. Here there is no evidence that the libellant was guilty of wilful misbehaviour. There is no proof that he was the aggressor in the fight or provoked it. Nor is there evidence that the fight or injury occurred as a result of the libellant's intoxication. If these were the facts respondent was required to prove them. See Callan v. Cope, 165 F.2d 703 (9th Cir. 1948).

■ Mere drunkenness at the time of a seaman's injury does not work a forfeiture of his right to cure and maintenance. The Quaker City, 1 F.Supp. 840, 843 (E.D.Pa.1931); Bentley v. Albatross S.S. Co., 203 F.2d 270, 273 (3d Cir. 1953).

Prendis v. Central Gulf S.S. Co., 201 F.Supp. 595 (E.D.Va.1962), aff'd, 330 F.2d 893 (4th Cir. 1963), is heavily relied upon by respondent. It is doubtful whether the case, properly construed, is inconsistent with the rationale of the instant decision. But if it is, this Court is not inclined to follow it. Other cases cited by respondent are clearly irrelevant.

■ Apparently, it had been respondent's plan to establish that libellant's injury had occurred otherwise than in the service of the NORINA by examining him as an adverse witness at the trial. A commitment given by libellant's counsel to respondent's counsel that libellant would be present at the trial was revoked only a day or so before the date fixed for trial because of the inability of libellant's counsel to get in touch with libellant. When it became apparent that the libellant would not be at the trial, the Court inquired of the respondent whether respondent desired to move for a continuance or a dismissal. Respondent disavowed a desire to do either, and expressed a preference to proceed with the trial. Whatever significance the non-appearance of libellant might otherwise have had has been waived.

Libellant is entitled to maintenance and cure from August 25, 1964 to October 15, 1964, a period of 52 days, at $8.00 per day, totaling $416.00, plus interest from October 15, 1964. The parties are requested to attempt to agree upon the interest figure to be inserted in the judgment.

■ There is no basis for allowing libellant counsel fees under the principal stated in Vaughan v. Atkinson, 369 U.S. 527, 530–531, 82 S.Ct. 997, 8 L.Ed.2d 88, rehearing denied, 370 U.S. 965, 82 S.Ct. 1578, 8 L.Ed.2d 834 (1962).

The motion for a "directed verdict" made by respondent at the close of the evidence is, of course, denied.

---

5. This language was quoted with approval in Warren v. United States, supra, 340

U.S. at pp. 529–530, 71 S.Ct. at pp. 435–436.