Robert A. **GULLEDGE**

v.

**UNITED STATES of America.**

Civ. A. No. 68–591.

United States District Court,
E. D. Pennsylvania.

Feb. 15, 1972.

William Goldstein, Philadelphia, Pa., for plaintiff.

John McMenamin, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This is a maritime action by a merchant seaman against his shipowner-employer to recover damages for personal injuries sustained while in the service of defendant's vessel. The complaint has two counts, the first for damages, alleging that defendant failed to provide a seaworthy vessel, and the second for maintenance and cure. We have jurisdiction under 28 U.S.C. § 1333.

Plaintiff's claims for relief arise from an incident which took place on January 11, 1968. At that time plaintiff was a seaman in the service of the S. S. AMARILLO VICTORY, a merchant vessel berthed in navigable waters, in Cam Ranh Bay, South Vietnam, which was owned and operated by defendant, United States of America.

The case involves a fight between plaintiff and a third cook on the vessel, Leroy Dorsey. Naturally, their versions of what took place differ dramatically.

Plaintiff spent the evening of January 11, 1968 from 6:00 p.m. until 10:00 p. m. at the Seaman's Institute in Cam Ranh Bay. When he left the club, he says he was neither first-class sober, nor drunk. Two of the ship's crew testified on deposition that they saw the plaintiff there at 8:30 p. m., and that he was staggering and argumentative. Little weight can be attached to their observations at that time, since the fight on the ship did not take place until 11:30 p. m., ample time for their characterization of the plaintiff to become no longer accurate.

Dorsey, meanwhile, had been sitting for a few hours in his robe and shower shoes watching television in the crew recreation room. He had been there alone until almost 11:30, when the chief steward, Horace Brown, joined him. A few minutes later plaintiff entered the recreation room after hitching a ride back to the ship. While he places the blame on Dorsey for the argument which then ensued between them, Brown's testimony lends more credence to Dorsey's version of what happened. Brown testified that plaintiff just walked right into the room and turned the television off without consulting either him or Dorsey. Dorsey turned it back on, while plaintiff insisted that it be kept off. When a heated argument began between plaintiff and Dorsey, Brown left the room. There are no witnesses to the initial stages of the scuffle which then took place. However, after a crowd gathered outside the recreation room, Brown returned and saw plaintiff sitting on top of the water fountain in the room clinched with Dorsey. This was confirmed by third mate Hubert Spires, who was on watch from 4:00 p. m. until midnight. Reacting to the crowd outside the door, he arrived to see plaintiff slide off the water fountain to the deck pulling Dorsey down with him.

Spires separated the two men. Neither one was injured at this time. He sent plaintiff to the crew mess room, and told Dorsey to remain in the recreation room. Both obeyed without argument. Spires then went down to the cargo hold. Coming back up some five minutes later he found that a crowd had gathered around the door to the recreation room again. When he entered the room, he found plaintiff and Dorsey struggling, with Dorsey on top, and blood all over the deck. Again, they were both separated, neither man giving third mate Spires any trouble.

It turned out that the blood on the deck was plaintiff's. He was taken to a hospital where he received twenty-three stitches in his head for six separate cuts. He also complained of back pains, while Dorsey was unharmed save for a cut lip which did not require treatment.

Plaintiff alleges that the six head cuts were caused by being struck six times on the head with a coffee mug in an unprovoked attack by Dorsey. Dorsey, on the other hand, claims that plaintiff attacked him with the mug, and that he hit him with it but once in defending himself after gaining control of it during the struggle. The court is without sufficient evidence to conclude that the mug was the cause of the six head cuts, rather than some object or objects in the room with which plaintiff came in contact during the fight. Moreover, though there are discrepancies in the stories of both Dorsey and plaintiff as contrasted with the testimony of other witnesses, plaintiff's account of an unprovoked attack from behind with the mug borders on the incredible. After being separated when first found scuffling in the recreation room, plaintiff was sent to another room in the ship, while Dorsey was told to

stay in the recreation room. Since they were again fighting in the recreation room five minutes later, the clear implication is that plaintiff returned there to confront Dorsey again. It is thus highly unlikely that he was at this time struck repeatedly from behind with a mug in an unprovoked surprise attack.

## SEAWORTHINESS

■ The warranty of seaworthiness is often referred to as a species of liability without fault, but "it does not mean that the shipowner is liable for injuries 'resulting from every sailor's brawl.'" Boudoin v. Lykes Brothers Steamship Company, Inc., 348 U.S. 336, 339, 75 S. Ct. 382, 384, 99 L.Ed. 354 (1955). "The crucial consideration is whether the ship was reasonably fit to permit the seaman to perform his task aboard her with reasonable safety." Brown v. Dravo Corporation, 258 F.2d 704, 706 (C.A. 3, 1958).

In Boudoin, the Court, reversing the Court of Appeals, held that the District Court could find a violation of seaworthiness if a crew member with a savage disposition attacked another seaman. "A seaman with a proclivity for assaulting people may, indeed, be a more deadly risk than a rope with a weak strand or a hull with a latent defect." Boudoin, supra, 348 U.S. at 339–340, 75 S.Ct. at 385.

The Court placed great reliance on a decision by Judge Learned Hand, adopting his standard for a finding of a breach of the warranty of seaworthiness in an assault case. A violation is shown whenever the attacking seaman was a man not fit to serve, unequal in disposition to the ordinary men of that calling. Jones v. Lykes Bros. Steamship Co., 204 F.2d 815 (C.A. 2, 1953); Boudoin, supra, 348 U.S. at 340, 75 S.Ct. 382; Kirsch v. United States, 450 F.2d 326 (C.A. 9, 1971).

In Jones, Judge Hand held that there was no violation of seaworthiness, even though one seaman beat another without provocation, resulting in severe injuries. He based this conclusion on the finding that no weapon was involved, and that the attacker was not an exceptionally quarrelsome person.

A savage assault with a dangerous weapon has been held to be enough proof in itself that the attacker was not equal in disposition to the ordinary seaman. Clevenger v. Starfish & Oyster Company, Inc., 325 F.2d 397 (C.A. 5, 1963). The plaintiff has urged that this is such a case, but we cannot agree. In the second fight, the one which produced plaintiff's injuries, we have conflicting testimony as to who initially tried to hit the other with the mug. Dorsey claims he struck once in self-defense, after gaining control of the mug from plaintiff who had attempted to beat him with it. Plaintiff, on the other hand, alleges that Dorsey initiated the use of the mug as a weapon, and did in fact beat him over the head six times. We are without sufficient evidence to conclude whether it was Dorsey or plaintiff, or possibly both of them, who used the mug as a weapon. Nor are we able to make a finding of fact that plaintiff's head injuries were caused by a blow from the mug.

■ The nature of the fight itself does not establish a violation of the warranty of seaworthiness. Therefore, a violation exists only if it can be shown that Dorsey was an especially bellicose or pugnacious person. Mere irascibility is not enough. Walters v. Moore-McCormack Lines, Inc., 309 F.2d 191, 193 (C.A. 2, 1962).

There was absolutely no evidence presented, outside of the incident in question, which would tend to show that Dorsey was other than a peaceable man. Brown, the chief steward, testified that Dorsey was a quiet man who did not have too much to do with other people. Horace Buck, a steward on the ship, also described Dorsey as a very quiet man, adding that he never knew him to drink, argue, or look for trouble.

■ Plaintiff has failed to meet his burden of proving that he was the victim of an attack by a seaman unfit to serve because of a disposition unequal

to the ordinary men of the calling. Thus, we conclude that there has been no violation of the warranty of seaworthiness by the United States.

## MAINTENANCE AND CURE

The determination of whether plaintiff is entitled to maintenance and cure is based on considerations entirely separate from those crucial in deciding if a violation of the warranty of seaworthiness has occurred.

■ "[L]ogically and historically the duty of maintenance and cure derives from a seaman's dependence on his ship, not from his individual deserts, and arises from his disability, not from anyone's fault." Farrell v. United States, 336 U.S. 511, 515–516, 69 S.Ct. 707, 709, 93 L.Ed. 850 (1949). The seaman is entitled to maintenance and cure even if he is at fault, being barred from recovery only if guilty of gross misconduct. Warren v. United States, 340 U.S. 523, 71 S.Ct. 432, 95 L.Ed. 503 (1951); Farrell v. United States, 336 U.S. 511, 69 S. Ct. 707, 93 L.Ed. 850 (1949); Aguilar v. Standard Oil Company of New Jersey, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943).

■ Once plaintiff showed that his injuries occurred while in the service of defendant's vessel, to defeat recovery for maintenance and cure, the burden was on the defendant to prove that plaintiff was guilty of gross misconduct. We do not think defendant has met that burden.

■ Maintenance and cure benefits have been denied in situations where the seaman's willful misconduct has been the sole and proximate cause of his disability, as in cases where a disease was a result of chronic alcoholism. Blouin v. American Export Isbrandtsen Lines, Inc., 319 F.Supp. 1150 (S.D.N.Y.1970); Smith v. Isthmian Lines, Inc., 205 F. Supp. 954 (N.D.Cal.1962). However, maintenance and cure is not forfeited by the mere circumstance that a seaman is intoxicated at the time that he is injured. Bentley v. Albatross S. S. Co., 203 F.2d 270 (C.A. 3, 1953).

■ In cases involving a seaman injured in a fight, courts have varied somewhat in their approach to claims for maintenance and cure. It is clear that where the injured seaman has been the physical aggressor in the fracas, and no more force than necessary has been used to repel his assault, he has no right of recovery. Watson v. Joshua Hendy Corporation, 245 F.2d 463 (C.A. 2, 1957). Likewise, if seamen fight in a pre-arranged battle, there would be no maintenance and cure for the wounded. The Quaker City, 1 F.Supp. 840 (E.D. Pa.1931) (dictum).

At least one court, however, has allowed recovery for maintenance and cure to an intoxicated seaman injured in a brawl. Stone v. Marine Transport Lines, Inc., 182 F.Supp. 200 (D.Md. 1960); contra, Matthews v. Gulf & South American Steamship Company, 226 F.Supp. 555 (E.D.Pa.1964). Insulting provocative language by one crew member which causes another seaman to attack and injure him also has not been deemed to be gross misconduct which would bar recovery. Murphy v. Light, 224 F.2d 944 (C.A. 5, 1955); but see Bencic v. Marine Traders, Inc., 255 F. Supp. 561, 565 (D.Del.1966) (dictum).

■ In this case, we know that there was an initial scuffle between the plaintiff and Dorsey in the ship's recreation room, with neither of them being injured. After this confrontation, Dorsey remained in the recreation room, while plaintiff was sent to the crew mess room. Approximately five minutes later Dorsey and plaintiff were fighting again in the recreation room. It appears that plaintiff returned there.[1] What happened afterwards is to a large extent a matter of speculation. Whether plaintiff merely insulted Dorsey upon

---

1. While this act could be viewed as a violation of third mate Spires' implied order to remain in the crew mess room after going there, it is not in itself such insubordination that it is gross misconduct.

his return to the recreation room, or hit him, is unknown. All we do know is that when third mate Spires returned to the scene, Dorsey was on top of plaintiff, and there was plenty of plaintiff's blood on the deck. Plaintiff had head cuts requiring 23 stitches, while Dorsey was virtually uninjured. Defendant had failed to prove that plaintiff was the physical aggressor, or that Dorsey did not use excessive force. Plaintiff is entitled to maintenance and cure, since defendant has not sustained its burden of proving that plaintiff's injuries were the result of his own willful gross misconduct.

In reaching this decision, we have kept in mind that "sailors lead a rough life and are more apt to use their fists than office employees." Jones v. Lykes Bros. Steamship Co., supra, 204 F.2d at 817. When a seaman is injured in a fight, we should not be too quick to conclude that he has been guilty of gross misconduct.

■■■ The parties agree that plaintiff was not fit for duty for a period of 47 days, from February 9 to March 27 in 1968. Calculated at the daily sum of $8.00, a rate stipulated to by counsel, total maintenance due plaintiff is $376.00.

Since plaintiff is entitled to maintenance and cure, he is also entitled to unearned wages until the end of the voyage. Jones v. Waterman S. S. Corporation, 155 F.2d 992 (C.A. 3, 1946). Since the end of the foreign articles was February 19, 1968, plaintiff may recover for ten days unearned wages (one-third of his monthly salary). Plaintiff's base pay was $422.58 a month, thus his recovery for unearned wages is $140.86.

The final issue involved here is whether plaintiff may recover for counsel fees. In Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962), the Court held that in an action for maintenance and cure, counsel fees could be recovered as part of damages, reversing a decision by the Fourth Circuit. In Vaughan, the Court found the shipowners to be callous in their atti-

tude toward the seaman's claim, making no investigation of it.

"As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court to get what was plainly owed him under laws that are centuries old. The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one." Vaughan, supra, 369 U.S. at 531, 82 S.Ct. at 999.

After Vaughan, most courts have confined an award of counsel fees as part of damages to those situations where the shipowner was acting in bad faith in an arbitrary and capricious manner in denying maintenance and cure. E. g., Richard v. Bauer Dredging Co., 433 F.2d 954 (C.A. 5, 1970); Roberts v. S. S. Argentina, 359 F.2d 430 (C.A. 2, 1966); Roberson v. S/S American Builder, 265 F.Supp. 794 (E.D.Va.1967).

■■■ In this case, the withholding of maintenance and cure was not the result of the shipowner's bad faith recalcitrance, but an honest belief that plaintiff was guilty of gross misconduct and thus not entitled to maintenance and cure. To allow recovery here for counsel fees we would have to conclude that "attorneys' fees have been made a routine element of damages to be paid any seaman who wins a contested maintenance and cure suit." Jordan v. Norfolk Dredging Company, 223 F.Supp. 79, 83 (E.D.Va. 1963). While we find ourselves persuaded by the reasoning of the Jordan decision, we find that this Circuit has at least impliedly followed the majority view, and we are of course bound by its determination.

In Johnson v. Mississippi Valley Barge Line Company, 335 F.2d 904 (C. A. 3, 1964), the court upheld the district court's rejection of plaintiff's requested charge to the jury that if a shipowner fails to provide maintenance and cure it is liable for counsel fees as consequential damages. It was indicated that recovery of counsel fees does not routinely follow an award for maintenance and

cure. "In denying this request, the district court observed that there was nothing in the record which would support an award of attorneys' fees." Johnson, supra, 335 F.2d at 907 (footnote 2).

This Circuit in denying counsel fees in an admiralty case, has observed that though there are exceptions to the general rule against assessing attorney's fees, "the cases applying these exceptions invariably involve wrongfulness or injustice often amounting to bad faith." Gore v. Clearwater Shipping Corporation, 378 F.2d 584, 588 (C.A. 3, 1967).

Therefore, in the situation presented by this case where there is absolutely no evidence of bad faith, plaintiff may not recover for counsel fees.

Plaintiff's recovery is as follows:

| | |
|---|---|
| Maintenance | $376.00 |
| Unearned Wages | 140.86 |
| Total | $516.86 |

The foregoing shall constitute our findings of fact and conclusions of law.