Charles PRENDIS, Appellant,

v.

CENTRAL GULF STEAMSHIP COMPA-
NY, a corporation, in personam, and
STEAMSHIP GREEN HARBOUR, her
tackle, etc., in rem, Appellees.

No. 8717.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 11, 1962.

Decided Jan. 24, 1963.

894

Sidney H. Kelsey, Norfolk, Va. (Ralph Rabinowitz, Norfolk, Va., on brief), for appellant.

Peter W. Rowe, Norfolk, Va. (Harry E. McCoy, and Seawell, McCoy, Winston & Dalton, Norfolk, Va., on brief), for appellees.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

This Libel is brought by seaman Charles Prendis against Central Gulf Steamship Company, in personam, and the Steamship Green Harbour, her tackle, etc., in rem. He asserts (1) a claim for personal injuries allegedly sustained due to unseaworthiness, and/or negligence under the Jones Act, 46 U.S. C.A. § 688, (2) a claim for maintenance and cure due to the above injury, and (3) a claim for unearned wages to the end of the interrupted foreign voyage.

Prendis signed on board the ship on February 1, 1957, at Newport News, Virginia. This initial voyage ended at New Orleans, Louisiana, on March 28, 1957, and Prendis, with the rest of the crew, was paid off. On March 29, 1957, Prendis requested and received a hospital slip for an eye growth which had existed for several years but which was now troubling him. As there was no relief available, Prendis was required to remain aboard ship. That afternoon he signed articles for a foreign voyage. On Monday, April 1, 1957, Libellant received permission and went ashore to have his eye examined. The diagnosis was chronic conjunctivitis. He was informed that an operation would be necessary. As he was a resident of Highland Springs, Virginia, which is near Richmond, Libellant was given the choice and decided that he would rather have the operation done at the Veterans Administration Hospital in Richmond, where he had previously been treated for his condition, than in a New Orleans hospital. He returned to the Green Harbour and reported that he would have to leave the ship. Libellant alleges that in order to get some rest he then returned to his quarters in the fireman-oiler's forecastle, where he had the upper bunk. As per custom, he stepped on a bench, held on to the railings, and hoisted himself into the upper bunk. Libellant further alleges that at some time in the evening while lowering himself from the bunk, he stepped on the bench, and fell when the bench toppled over. He alleges that he fell on his face, resulting in injury to his neck and shoulder. The alleged negligence of the ship was in its failure to provide a safe means of getting out of the upper bunk. It was alleged that the bench which was used for the purpose was unsteady due to excessive wear and that, in any event, the use of a bench for such a purpose was unsafe. It was alleged that there was no ladder in the fore-man-oiler's forecastle for use in leaving the upper bunk and that the guard rail on the lower bunk, often used as a foothold, had been reversed and it could not be so used. Prendis alleges that he duly reported his injury; however, this was denied by each person to whom Prendis claims to have reported.

The following day, Prendis was paid off by the master in front of the shipping commissioner, as provided for by 46 U. S.C.A. § 644. He signed a release for "all claims for wages in respect of the voyage engaged in" and the master released Prendis "from all claims in consideration of this release."

Prendis then flew to Richmond, his transportation having been paid by Libelee, and reported to the Veterans Administration Hospital on April 3, 1957. He reported injury due to a fall aboard ship and pain resulting therefrom. There is a conflict in the expert medical

testimony as to the extent of the Libellant's injuries. The Libellant's medical evidence indicated that Prendis suffered from "Torticollis acute" and "root compression syndrome," which resulted in the development of post traumatic neurosis. Notwithstanding the conflict in the medical testimony, the hospital records indicate a prolonged period of active treatment. From April 22nd through May 9, 1957, the treatment involved bed rest and application of cervical traction. At the time of the trial in April, 1959, Prendis had been released to the psychiatric care of a neuropsychiatrist, and, in addition to bi-weekly visits, was being given a tranquilizing drug.

The oral testimony taken at the trial consists of Prendis' testimony, the testimony of some medical experts, and the testimony of a maritime expert as to the ship's safety. The rest of the evidence was either by exhibit or deposition.

The Trial Judge, after comparing Prendis' oral testimony about the alleged accident with the deposition of a fellow seaman attempting to support Prendis' story, found the two to conflict so strongly as to indicate that the accident report was "cooked up" and was in fact false. Adding to this belief was the contradiction between Prendis' claim of prompt reporting of the injury to several of the ship's officers, and their denial of any such report. The Court rejected the testimony concerning the fall, and dismissed Prendis' personal injury claim for damages due to unseaworthiness and/or negligence under the Jones Act.

As an alternate ground for the above holding, the Trial Court found that the absence of a ladder does not render the vessel unseaworthy or constitute negligence on the part of the owner.

As to the claim for maintenance and cure arising out of the injury, the Trial Court recognized that all Libellant would have to show would be injury in the service of the ship, and that this could have occurred even ashore, possibly after the Libellant signed off the ship. However, he held that since injury in such a manner had not been proved, Prendis was not entitled to a judgment for maintenance and cure.

The Trial Court dismissed the claim for wages to the end of the voyage on the ground that the termination of the employment was at Libellant's request and was by mutual consent.

I

■ Since McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954) the scope of review in admiralty appeals has been the same clearly erroneous rule of Fed.R.Civ. P. 52(a) which applies in the ordinary non-jury civil case. Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); Tuttle v. American Oil, 292 F.2d 123 (4 Cir. 1961).

■ Rule 52(a) provides that in a non-jury case, "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' Where much of the testimony is by deposition, this Court is as able to judge of credibility as the Trial Court; nevertheless, the findings still must be tested by the "clearly erroneous" rule, Skinner v. Parnell, 257 F.2d 345 (10 Cir. 1958).

■ In the instant case the only live testimony as to the manner of occurrence of the injury was that of Prendis, the Libellant. Indeed, he is the only person with any first hand knowledge of the accident. Because of several inconsistencies between the testimony of Prendis and that of others, including Navas, Prendis' friend, who testified by deposition, the Trial Court came to the conclusion that the injury did not occur in the manner that Prendis claims. Although we might have interpreted the testimony differently, we are not convinced that the decision of the Trial Court was clearly erroneous. This feeling is reinforced because we must recognize the superior opportunity of the Trial Court to judge Prendis' credibility, since he testified orally. A conflict also exists in the testi-

mony as to whether the injury was ever reported. The Trial Court believed the defense witnesses who testified by deposition that no report had been made. On the record in this case, we cannot hold that the Trial Court was clearly erroneous as to this finding either.

■ Under the circumstances we feel compelled to uphold the Trial Court's action in dismissing the Jones Act claim.

## II

■ As to the claim for maintenance and cure for the injuries, no showing of negligence or unseaworthiness need be made. Libellant will be entitled to maintenance and cure for the injury if it was sustained while in the service of the ship. The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S. Ct. 930, 87 L.Ed. 1107 (1943). The duty to provide maintenance and cure for an injury to a seaman arises out of the relationship between the seaman and his vessel and the vessel's owner, and not out of any theory of fault.

■■ Even though the right of recovery for maintenance and cure is quite broad, the Libellant still bears the burden of alleging and proving facts that bring himself within its scope. The District Court, as trier of fact, found that Prendis failed to carry this burden. Prendis' story as to the manner in which the face, neck and back injuries and the resultant neurosis occurred was rejected as false. The Libellant's claim for maintenance and cure for this injury must therefore fail. Miller v. Lykes Bros.-Ripley S. S. Co., 98 F.2d 185 (5 Cir. 1938); Haskell v. Socony Mobil Oil Co., 237 F.2d 707 (1 Cir. 1956).

## III

■ There is no question that maritime law provides that a seaman who is forced to leave his ship because of injury or disease is entitled to wages to the end of the voyage. The Osceola, supra; Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Benedict on Admiralty, Sixth

Edition (1940) Vol. 1, Sec. 83; Gilmore & Black on Admiralty (1957) pp. 253–271. However, 46 U.S.C.A. § 644 provides that a seaman and his master may execute a mutual release which will bar the seaman's recovery of future wages. Such a release has been executed in the instant case. Although 46 U.S.C.A. § 597 provides that this release may be set aside if an injustice to the seaman would otherwise occur, the Trial Court found that there was no basis in fact for so doing in this case. On this record we cannot say that this finding was clearly erroneous or that it constituted an abuse of discretion by the Trial Court.

For the above reasons the decision of the Trial Court is affirmed.

Affirmed.