Michael **COUGHENOUR**, Plaintiff,

v.

**CAMPBELL BARGE LINE, INC.,**
**Defendant.**

Civ. A. No. 74–55.

United States District Court,
W. D. Pennsylvania.

Dec. 20, 1974.

502

Hymen Schlesinger, Pittsburgh, Pa., for plaintiff.

Louis Loughren, Grogan, Graffam & McGinley, Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

Plaintiff, Michael Roy Coughenour, a seaman, brought this action for Maintenance and Cure against his employer, Campbell Barge Line, Inc. (Campbell), and for counsel fees and medical expert witness fees. The case was tried to the Court without a jury.

Plaintiff's version of the occurrence may be summarized as follows: While employed by Campbell as a deckhand on board the Defendant's motor vessel, Delta, Coughenour claims he was injured in the early morning hours of September 5, 1973, when he slipped and fell while attempting to throw a rope from one barge to another, and that as a direct result of this fall, he incurred injuries to his back and lower left leg and foot. These injuries have occasioned him much pain and necessary incidental medical expenses. Shortly after his fall, the Plaintiff was put ashore and taken to the Divine Providence Hospital in Pittsburgh, where he was X-rayed and released. Subsequently, while still in pain, he returned to work on the same vessel, and on a later occasion a different vessel, but each time was unable to perform the duties incidental to his work as a deckhand because of his injuries. Finally, he left the Defendant's employ altogether and has not returned. While the Plaintiff has been examined and treated by numerous physicians, and although he has improved, he claims that he has not reached a point of maximum cure.

The Defendant denies that maintenance and cure is owing to the Plaintiff. Campbell denies knowledge of any such accident or that the Plaintiff sustained any injuries, and maintains that if he has any problem with his back and/or foot, it is the result of some occurrence while the Plaintiff was not in the service of one of its vessels. Defendant contends that the Plaintiff was dissatisfied with his job as a seaman and quit on his own accord, and not as the result of any alleged injuries incurred while a deckhand for the Defendant.

Based upon all of the evidence, including the hospital records, testimony and depositions produced at the Non-jury Trial, the Court makes the following

## FINDINGS OF FACT

1. Plaintiff is a nineteen year old seaman, with a ninth grade education, who began his employment with the Defendant on August 23, 1973.

2. Shortly after midnight on September 5, 1973, while engaged in his duties as a deckhand on the Defendant's motor vessel, Delta, the Plaintiff slipped and fell while attempting to secure a line on a barge which was in tow.

3. After the Plaintiff rested awhile, he notified the pilot of the vessel, Peter John Alouise, who in turn contacted the Marine Superintendent by radio, and was directed to put the Plaintiff ashore for medical attention.

4. Plaintiff was taken to Divine Providence Hospital in Pittsburgh, where he was examined, X-rayed, and diagnosed as having incurred a "lumbar sprain". No medical history is disclosed from the Hospital records. (Tr. 8–9, Pltf.Exh. 1)

5. On the next day, the Plaintiff returned to the vessel Delta and attempted to do his work as before, but had some pain. After five or six days, he felt he could continue no longer, and on approximately September 11, 1973, he went home to rest for awhile. (Tr. 9, 41)

6. Plaintiff next returned to work on October 5, 1973, aboard the motor vessel "Tom G.", a Campbell vessel, but only remained for a period of about two and one-half hours. He left the vessel in apparent disgust after his back and legs began to bother him, but not before no-

tifying the Captain and commenting on the general calibre of people who work on such vessels. (Tr. 150, 160–167)

7. Plaintiff never thereafter returned to work for Campbell, and did not subsequently communicate with anyone from the Defendant Company. (Tr. 11)

8. Some time later, however, the Plaintiff entered the employ of M & G Transport Services, Incorporated (Tr. 60, Deft.Exh. 2), another towing company, but remained only for a period of five or six days. Thereafter, the Plaintiff worked periodically on his father's tobacco farm, and for two days at the Scott & Dillon Tobacco Company. (Tr. 62–67)

9. Since his accident the Plaintiff has received treatment from Dr. Samuel Sherman in Pittsburgh, and Doctors Coronel, Burner and Thaler of the Holzer Medical Center in Gallipolis, Ohio. (Pltf.Exhs. 2 through 2(d))

10. Dr. Sherman, a specialist in rehabilitative medicine, diagnosed Coughenour's condition as lumbosacral strain, post-traumatic anxiety reaction, and possible discogenic patholog, lumbar. Doctor Sherman considered the Plaintiff's foot problems to be the result of a "dropped foot" condition, and corroborative support thereof was given by Dr. Thaler's prescription of a foot brace. (Pltf.Exh. 2) Both of these physicians recommended that an electromyographic test be performed. However, it is clear that the Plaintiff's condition had considerably improved since he was last examined by Dr. Sherman in June of 1974. The deposition of Doctor Lowell B. Lubic, a specialist in neurology, as introduced by Defendant discloses that Plaintiff has a moderate weakness in his left leg, but that this condition is the result of a lumbosacral strain without neurological involvement. According to the history taken by Dr. Lubic and supported by the Doctor's findings, Plaintiff's complaints of numbness and weakness developed approximately two months after his initial injury.

11. In the Plaintiff's signed statement provided to Campbell's investigator at a personal interview at the Plaintiff's home (Deft. Exh. 1) there were some inconsistencies with the Plaintiff's testimony at trial and with statements in his deposition, but viewed by the Court, as the finder of fact, these do not rise to such a level as to impeach the credibility of a nineteen year old seaman with a ninth grade education.

12. Maintenance, if· due, has been stipulated to be in the amount of $8.00 per day. (Tr. 145)

## DISCUSSION

■ Maintenance and Cure is for the benefit of seamen injured while in the service of their vessels, Siders v. Ohio River Company, 351 F.Supp. 987, 992 (W.D.Pa.1971), affirmed 469 F.2d 1093, (3d Cir.), and the seaman has the burden of proving that the injury occurred while in the service of the ship. Id. at 993; See also Prendis v. Central Gulf Steamship Company, 330 F.2d 893, 896 (4th Cir. 1963). The right to maintenance and cure is considered to be "among the most pervasive of all liabilities imposed on a shipowner", and ambiguities or doubts must be resolved in favor of the seaman. Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed. 2d 88 (1962); Aguilar v. Standard Oil Co., 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107 (1943); Oswalt v. Williamson Towing Company, Inc., 488 F.2d 51, 54 (5th Cir. 1974). The duty to provide maintenance and cure is not one of compensation, but rather, is in the nature of supportive and curative care. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Lipari v. Maritime Overseas Corporation, 493 F.2d 207 (3d Cir. 1974); Sobosle v. United States Steel Corporation, 359 F. 2d 7 (3d Cir. 1966). Once the seaman has shown that his injuries occurred while in the service of his vessel, the defendant must prove that the seaman was guilty of gross misconduct to defeat his claim for maintenance and cure. Gul-

ledge v. United States, 337 F.Supp. 1108 (E.D.Pa.1972), affirmed 474 F.2d 1340 (3d Cir.)

The evidence in this case is clear that Plaintiff is a seaman who was employed as a deckhand for Campbell. As an injured deckhand, he would be entitled to maintenance and cure to the time when maximum cure has been achieved. Andrews v. Dravo Corporation, 406 F.2d 785 (3d Cir. 1969). The employer's duty is a continuing one, and the duty is not extinguished when the seaman's employment is terminated. *Id.* at 788. While corroborative evidence was almost exclusively circumstantial, we have found that on September 5, 1973, Plaintiff fell and in so doing injured his back. Defendant's Pilot, Peter Alouise, substantiated Plaintiff's testimony that he notified Defendant's personnel of the incident early in the morning. Alouise immediately contacted the Marine Superintendent by radio and received instructions to put Coughenour ashore for medical attention. The emergency room records of the Divine Providence Hospital (Pltf.Exh. 1) disclosed X-rays of Plaintiff's spinal region were taken and found to be negative; however, a preliminary diagnosis of "lumbar sprain" was noted on the hospital record. No other Divine Providence medical records were offered, and we must assume none exist.

It is Campbell's contention that the Plaintiff has not proven any injury occurring while in its employment. Defendant attempted to show through cross-examination of the Plaintiff that after he quit his job with the Defendant, he then applied for and accepted employment with the M & G Transport Services, Inc., and the Scott & Dillon Tobacco Company. Defendant argues that this testimony was adequate to show that at least as of the time these applications were made for the jobs, the Plaintiff had no back and/or leg impairments, as alleged. Further, Campbell asserts that the testimony of Peter Alouise concerning Plaintiff's statement

when he quit that "I am getting off these boats. Only idiots and dummies work out here" (Tr. 150), was sufficient to show Plaintiff's real reason for leaving the Defendant's employ.

Plaintiff, on the other hand, testified that while he may have made the remark referred to above, the real reason he made the statement was because of the pain and difficulty he was experiencing because of his injuries of September 5, 1973.

"Q He [Alouise] stated that he had a conversation with you on the day you came back to work and that you made the statement as follows: "The hell with this shit. Only idiots and dumbheads work on this boat."

Did you make any such statement?

A I might have. I am not for sure.

Q Do you use that kind of language?

A Not usually, no.

Q What was the occasion for it?

A Just aggravated and my back was hurting and leg. If I did use it, I won't say for sure.

Q Now, were you relieved from duty on the same day?

A No, I don't think so. I just got off at the lext lock. (sic)

Q It was testified to by Mr. Alouise that the captain called in, spoke to Mr. Johnson and reported some such remark that you made, is that correct? Did you know that he had made that statement over the radio?

A Pete and him was joking around, and Pete asked me, he said, 'Do you want me to really tell him?' And I told Pete I didn't care what he told him.

Q What did you mean by that?

A It didn't make any difference because I was getting off.

Q Why were you getting off?

A Because my back and legs was hurting, and I was aggravated and just wasn't able to work.

Q So, then, they told you they were going to report this remark of yours to management? Is that what you're trying to tell us?

A Yes, I guess.

Q All right. And after that you got off?

A Yes.

Q Do you know whether or not they decided to get rid of you or whether it was because you left on account of your back injury?

A Would you repeat that again?

Q Do you know whether it was that they discharged you or whether you quit because of your back injury?

A I don't. I don't understand what you mean.

Q Well, I am not talking about your employment status. Do you know whether or not you were discharged for this remark or was it because—you're terminated because of the fact that you quit on account of your back injury? Which is it?

A I wasn't discharged because of what I said. It wasn't that. It is just that I quit because of my back and my legs." (Tr. 166–167)

As to the issue of the subsequent employment, Plaintiff admitted this as well, but stated that he was no more fit for either of the two later pursuits because of the pain in his back and legs, than he was for his job as a deckhand for Campbell, as evidenced by his short tenure at each. (Tr. 59, 65) After closely examining the testimony as a whole, we find the Defendant's contentions without merit, and find that Plaintiff was not guilty of gross misconduct and is entitled to Maintenance.

With respect to Plaintiff's claim for Cure in this case, the import of the various medical opinions submitted, while varying as to degree of sever-ity, were consistent with some form of back infirmity, whether originating from some direct disc injury or from a nerve root irritation, or muscular irregularities. Additionally, there was substantial agreement among the doctors as to the Plaintiff's inability to control his leg muscles at a normal level. Therefore, Plaintiff is entitled to Cure as a result of his injuries while on board the Delta.

Several other matters remain for disposition, and these pertain to Plaintiff's demand for counsel fees, for interest on the Maintenance awarded, and for costs of medical witnesses. Plaintiff contends that Defendant willfully failed in its obligation to provide Maintenance and Cure. This position cannot be sustained, and will be denied. While we are here finding that Plaintiff is entitled to Maintenance and Cure, it must be kept in mind that the accident occurred less than two months after Plaintiff's initial entry into the employment of the Defendant, and that Plaintiff admittedly made no complaints to the Defendant, except on the day of the injury. When he quit his job, he left in apparent disgust, but at no time did he tell Defendant's personnel that his departure was due to any pain and injuries he experienced while on Defendant's vessels. Furthermore, Plaintiff admitted that he had no contacts with Campbell whatsoever after leaving. Plaintiff's counsel is correct when he states that he notified the Defendant on several occasions, and that the filing of the suit is notice itself. But, it is the conclusion of the Court that the Defendant acted in a good faith belief that the Plaintiff was not entitled to Maintenance and Cure. Therefore, Plaintiff's claim for counsel fees is denied. Hollingsworth v. Maritime Overseas Corporation, 363 F.Supp. 1393 (E.D.Pa.1973); Gulledge v. United States, *supra*. Plaintiff's claim for costs of medical expert witnesses is deemed proper insofar as they were necessary in establishing the claim for Maintenance and Cure and, therefore, is sustained. Finally, Plaintiff also claims interest on the Mainte-

nance recovered, and is entitled to such interest under the facts of this case. Ward v. Union Barge Line Corporation, 443 F.2d 565 (3d Cir. 1971); Seifried v. Mon River Towing, Inc., 388 F.Supp. 233 (W.D.Pa., filed March 14, 1974).

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this cause of action.

2. Plaintiff, Michael Roy Coughenour, was a seaman when he sustained his injuries, and was in the service of the motor vessel Delta, owned by the Campbell Barge Line, Inc.

3. Plaintiff is entitled to Maintenance and Cure up to and including the entry of this Opinion and Order for the reasons as set forth herein.

4. Maintenance is to be paid at the rate of $8.00 per day from September 5, 1973 to the present, together with interest to the date of this Opinion and Order.

5. Plaintiff's claim for costs of medical expert witnesses is granted.

6. Plaintiff's claim for counsel fees is denied.

An appropriate Order will be entered.