**TCW SPECIAL CREDITS, a California General Partnership, as Agent and Nominee, Plaintiff,**

v.

**F/V KASSANDRA Z, OFFICIAL NO. 653390, et. al, HER ENGINES, NETS, FURNITURE, etc., *In Rem* KASSANDRA Z FISHING COMPANY, INC., a commonwealth of the Northern Mariana Islands Corporation, *in Personam*, Defendants.**

---

**ANTHONY SARDINA, Plaintiff-in-Intervention.**

High Court of American Samoa
Trial Division

CA No. 92-96

February 2, 2005

Before KRUSE, Chief Justice; and ATIULAGI, Associate Justice.

Counsel: For Plaintiff, Brad Fisher, Henry W. Kappel
For Plaintiff-in-Intervention Sardina, Thomas C. Gilmore, Roy
J.D. Hall, Jr
For Defendant Kassandra Z, Mark Ude

ORDER RE: PREJUDGMENT INTEREST AND COSTS

### Introduction

On August 24, 2001, we awarded Plaintiff-in-Intervention Anthony Sardina ("Sardina") $276,193.20 in damages for his January 17, 1996 injury, and $18,420.06 for maintenance and cure as well as attorney's fees. On September 4, 2001, Sardina filed a declaration of costs seeking

the sum of $60,268.04. On July 27, 2004, the Appellate Division remanded this case instructing us to either award prejudgment interest, or make findings of fact to support a decision not to do so.

We are now charged with the task of determining the appropriate prejudgment interest award, if any, and an appropriate reimbursement for costs.

## Discussion

### I. Prejudgment Interest

In *Interocean Ships v. Samoa Gases,* this court determined that the "general rule is to award prejudgment interest, although this award always lies soundly within the court's discretion." 26 A.S.R.2d 28, 43 (Trial Div. 1994); *see also In re Nichole Trahan,* 10 F.3d 1190, 1196-97 (5th Cir. 1994) (noting that courts enjoy broad discretion in setting prejudgment interest rates). Once a court decides to exercise its discretion to award prejudgment interest, the Supreme Court has reasoned that "[t]he essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss," and, moreover, that "interest is not recovered according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.,* 515 U.S. 189, 196 (1995); *Blau v. Lehman,* 368 U.S. 403, 414 (1962); *In re Burlington Northern, Inc. Employment Practices Litigation,* 810 F.2d 601 (7th Cir. 1986) (prejudgment interest is committed to the sound discretion of district court and is to be based on equitable considerations).

In accordance with our mandate, we award prejudgment interest. In considering principles of compensation and fairness in determining the appropriate prejudgment interest rate, we first reject Sardina's claim that he is entitled to a "high" rate of prejudgment interest for his role in pursuing the litigation. Sardina maintains that because he, unlike the other claimants who settled, took this case to trial, his involvement entitles him to an annual rate of prejudgment interest higher than the historical interest rate, and as high as 15 percent. In essence, Sardina maintains, he should be rewarded for carrying the litigation forward. In light of the Supreme Court decision in *City of Milwaukee,* and general considerations of equity, we disagree. In *City of Milwaukee,* the City maintained in part that because it pursued the dispute over liability in good faith, interest should be awarded beyond that which would make the injured party whole as a penalty for respondent's alleged bad faith conduct. 515 U.S. at 196-97. The Court disagreed, concluding that "prejudgment interest is not awarded as a penalty; it is merely an element

of just compensation." *Id.* at 197. In addressing Sardina's arguments, we conversely hold that prejudgment interest is not awarded as a reward for successful litigation, but similarly is an element of compensation. The degree of damages to which Sardina is entitled for carrying his suit forward have already been calculated in our earlier damages award. The limited remaining matter of prejudgment interest does not serve to penalize Defendants further, but simply seeks to compensate him for the full monetary value until the time of judgment of that award.

For the same reason, we also reject Sardina's claim that he is entitled to prejudgment interest at the rate of six percent. Sardina suggests in the alternative that we should use our discretion to award interest at the rate of six percent in accordance with A.S.C.A. § 28.1501, relating to rates of interest applicable to unwritten loan agreements. Under § 28.1501(a):

> [e]xcept as provided in this title, no person may charge more than 15 percent a year as interest on a debt or obligation, and no agreement to pay a rate of interest higher than 6 percent a year shall be enforceable unless the same is in writing and is signed by the party to be charged. The rate of interest when there is no written agreement with respect thereto shall be 6 percent a year, and interest shall be presumed on overdue debts.

We reason that far from the present circumstances, the legislative purpose behind A.S.C.A. § 28.1501(a) is to encourage lending by ensuring that creditors will receive a default interest rate at a minimum threshold of six percent upon debts. Thus, where a debtor knowingly becomes indebted to a creditor, but becomes overdue in repaying that debt, the creditor can obtain interest on the obligation at the base rate of six percent. Prejudgment interest, however, is unrelated to the traditional concept of credit or debt. Prejudgment interest seeks to compensate a party with the full monetary value of the loss from the time of the injury to the time of judgment. Liability for prejudgment interest arises, then, only upon a court's issuance of the judgment. Because the obligated party was under no obligation to pay damages or interest upon those damages prior to judgment, the owing party in turn cannot be regarded as a debtor during the period before the judgment was issued. More specific to the circumstances of this case, sufficient funds of $400,000 had already been deposited in the Court registry pending the outcome of Anthony Sardina's appeal. Thus, the concern here is not that a debt has not been paid, but that the funds once paid have not been distributed by the Court. For these reasons, we conclude that § 28.1501(a) is not analogous, and, therefore, not applicable to determining the interest rate

43

in prejudgment interest situations.[1]

In addition to finding § 28.1501(a) theoretically inapplicable, so too do we independently conclude that an interest award at a rate of six percent would be inequitable. Consequently, we award Sardina interest calculated by the actual historical investment rate had Plaintiff invested the vessel sale proceeds in an interest bearing bank account from the time of his January 17, 1996 injury until the time of our August 24, 2001 judgment.

Although Plaintiff TCW Special Credits ("TCW") argues in favor of this historic interest measure, counsel's submission is for some reason a flat interest rate of 3.2 percent to the principal, an amount calculated as the average rate of historic interest. We disagree with this calculation. First, TCW incorrectly includes rate periods up until the present date in its calculations, well beyond the 2001 judgment. And second, a flat interest rate fails to take into account that an investor would receive compounding interest. Consequently, rather than awarding a flat interest rate over the whole period, we require that the interest be compounding, in which interest in each period be calculated based on the combined principal and earlier accumulated interest from earlier rate periods, consistent with the interest rates at ANZ bank from the date of injury until the time of the 2001 judgment.

Defendant F/V Kassandra Z ("Kassandra Z") maintains that such an award would be inequitable in that prejudgment interest was already built into our earlier judgment. Indeed, Kassandra Z notes, in awarding $276,193.20 in special damages in our August 2001 order, we determined that the award was, in part, comprised of "$800,257 in expected earnings lost . . . and adjusted for present value and inflation by

---

[1] We note that we have applied § 28.1501 in the context of post-judgment interest, and do not now depart from this view. *See Samoa Products, Inc. v. A`asa*, 17 A.S.R.2d 66, 68 (1990) (reasoning that the 6 percent statutory rate of interest specified under § 28.1501 applied to post-judgment interest awards). Whereas prejudgment interest seeks to compensate a party with the full monetary value of the loss from the time of the injury to the time of judgment, post-judgment interest seeks to compensate a party with the full monetary value of the loss from the time of judgment to the time of payment. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827 (1990). Thus, where the party in the prejudgment interest context is unaware of the payment owed, the party in the post-judgment context is aware of its obligation to pay, but fails to do so. In turn, because the obligor in the post-judgment context resembles a traditional debtor, we have treated § 28.1501, as applicable in such circumstances.

3%." Whether or not this "double recovery" argument is compelling, Kassandra Z fails to recognize that this argument is overdue and should have been addressed to the appellate court. In remanding this case, the appellate court has already made a determination that we did *not* award prejudgment interest. Therefore, the issue before us today is not whether we already awarded prejudgment interest, but is what, if any, such prejudgment interest should be. Accordingly, we conclude that the principal upon which compounding historic prejudgment interest is based is the combined trial court damage award of $276,193.20 for special damages and $18,420.06 for maintenance and cure.

## II. Costs

In addition to prejudgment interest, Sardina seeks $60,268.04 in post-trial costs awarded pursuant to various provisions of 28 U.S.C. § 1821 and § 1920. Although TCW takes no position here, Kassandra Z disputes this figure and maintains that Sardina is entitled to costs in the amount of $12,273.94.

■ Under T.C.R.C.P. 54(d), "[e]xcept when express provision therefore is made either in a statute of American Samoa or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ." We are aware of no rule or statute disallowing costs in this case. In our order in this matter of May 1, 2000, however, we reasoned that in examining costs, we should utilize relevant federal statutory law to determine if desired costs are appropriate.

### A. Court Reporter Fees

■ Kassandra Z correctly observes that Sardina may recover "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." 28 U.S.C. § 1920(2). In the present case, Sardina seeks a total of $3,750.12 in such fees. Kassandra Z notes that among such fees Sardina includes a $40.40 charge for copies of exhibits. We agree with Kassandra Z that we must deduct this court reporter charge, in turn awarding Sardina with a total of $3,709.72 for court reporter costs.

### B. Witness Deposition Fees

■ Sardina seeks a total of $1,437.50 for witness deposition costs. As we observed in our May 1, 2000 order, 28 U.S.C. § 1920 permits deposition expenses to be awarded as costs. *Alflex Corp. v. Underwriters Lab, Inc.*, 914 F.2d 175, 177-78 (9th Cir. 1990). We noted, however, that "a party who desires costs to be assigned shall state them in an itemized and verified bill of costs. . . ." A.C.R. 39(d).

Kassandra Z notes, that despite Sardina's total, Sardina has invoices for only $375.00 of these costs, and therefore should receive only this amount. Recognizing that we should give careful scrutiny to costs proposed by winning parties, we agree with Kassandra Z.

Sardina maintains that after a good faith and diligent search, he was unable to obtain supporting documentation for the remaining witness expenses, but that the amount he seeks is an accurate reflection of costs. Absent more, this is not good enough. Sardina has supplied no evidence, apart from his assurances, that these are indeed the correct figures for deposition expenses. Consequently, we grant $375.00 for deposition costs.

C. Witness Fees

 Sardina has charged an attendance fee of $40.00 for all enumerated witnesses, with the exception of Harold Laufenberg, a witness who testified telephonically, whom Sardina charges $425.00 for court testimony. We note, as does Kassandra Z, that 28 U.S.C. § 1821(b) states that "[a] witness shall be paid an attendance fee of $40 per day for each day's attendance." Sardina may, accordingly, only obtain $40.00 for Laufenberg's telephonic attendance.

 Additionally, Sardina seeks $15,000, $5,200, and $12,180 for "additional fees for services rendered" for witnesses Richard Richley, Captain Kenneth Franke, and Robert Hall respectively. Although § 1821 allows for reimbursement of travel expenses, subsistence costs, and other such costs incurred in order to make a witness available to testify, we observed in our earlier order that the statute does not allow a winning party to simply charge such "additional costs" as it deems fit. *See Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441-45 (1987) (holding that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920."). Consequently, while we will award costs Sardina incurred for witness testimony, subsistence, and airfare, he has shown no applicable fee-shifting statute to allow the additional service fees further requested.

We therefore award $40.00 for Harold Laufenberg, $3,606.00 for Richard Richley, $2,115.00 for Captain Kenneth Franke, and $2,115.00 for Robert Hall, totaling $7876.00 for witness fees.

D. "Court Appointed" Witness Fees

 Sardina seeks reimbursement for the salaries, fees, expenses, and costs of witnesses Robert Wallace and Thomas J. Wegman pursuant to

46

28 U.S.C. § 1920(6). Kassandra Z correctly observes, however, that § 1920(6) pertains only to court-appointed witnesses, and thus such reimbursement is not applicable here. Consequently, we will award as costs $40.00 per day for the trial testimony of these witnesses pursuant to § 1821(b).

E. Out-of-Pocket Expenses

Sardina further seeks out-of-pocket expenses related to recovery of maintenance and cure benefits, naming in particular air expenses for Plaintiff and his counsel from San Diego, California totaling $3,280.00.

As we concluded in our May 1, 2000 order, attorney costs are not taxable as costs. Therefore, we deduct $1,640 for such billed air travel.

■ Sardina also seeks his own $1,640 in travel costs for participating in this litigation. It is clear that an employer's willful or arbitrary failure to pay maintenance and cure damages gives rise to tortious conduct in which the employer may be liable for attorneys' fees and punitive damages. *See, e.g., Robinson v. Pocahantas, Inc.*, 477 F.2d 1048 (1st Cir. 1973). As the Appellate Division notes, our earlier award of attorneys' fees reflects our determination that the failure to pay "cure" benefits was willful.

Pointing to the proposition that "the trial court should make the seaman 'whole'" and that the seaman "should not be required to pay money out of his pocket to collect maintenance lawfully due to him," Sardina seeks his travel expenses incurred in pursuing this action. *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1501 (5th Cir. 1995). Accepting this proposition, Kassandra Z suggests that Sardina is entitled only to some sort of proportional award for his travel expenses. Kassandra Z's position is given support in *Coughenour v. Campbell Barge Line, Inc.*, 388 F.Supp. 501 (W.D. Pa. 1974). In *Coughenour*, the court reasoned that a plaintiff's claim for costs for a medical expert witnesses was proper only insofar as they were necessary in establishing the claim for maintenance and cure. *Id.* at 506.

■ In the present case, however, while it may be true that Sardina's litigation focused primarily on special damages with less time spent on his maintenance and cure award, he would still have had to pay the exact same airfare to fly to American Samoa just to pursue his maintenance and cure claim. That is, while we may apportion costs, as in *Coughenour*, when dealing with services, we will not discount them where they would have been necessary to pursue the maintenance and cure claim alone. Accordingly, we award Sardina the $1,640 in travel costs to collect the maintenance and cure lawfully due to him.

## Order

For the reasons stated above, we award prejudgment interest and costs accordingly and direct calculation of these awards consistent with this opinion. It is so ordered.